02-10-398-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00398-CR

 

 


 
 
 Cody Leroy Moore
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 97th
District Court OF Montague COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

Introduction

Appellant
Cody Leroy Moore appeals his conviction for manufacturing more than 400 grams
of methamphetamine.[2]  We affirm.

Background
Facts and Procedural History

          On
March 12, 2009, the Montague County Sheriff’s Department dispatched Deputies Jonathan
Cheshire and Lee Phariss to investigate a suspicious odor reported near East RC
Road in rural Montague County.  When the deputies reached the area, Cheshire detected
a strong odor that he recognized from his training and experience as ether.  He
and Phariss tracked the odor to a metal travel trailer wedged inside a garage
at the only residence in the area.  The residence appeared empty, but there was
a light on inside the trailer and the surrounding area smelled strongly of
ether.  Cheshire knew from his training and experience investigating
clandestine drug labs that ether was associated with the illicit production of methamphetamine. 
Cheshire’s supervisor, Chief Deputy J.T. Mitchell, had instructed all officers in
the department to alert him whenever they encountered a potential drug lab. 
Cheshire called Mitchell, and when Mitchell arrived the officers approached the
trailer and knocked on the door.  Appellant emerged from within the trailer with
his hands in the air.  Cheshire asked him if he had been manufacturing
methamphetamine, to which Appellant replied that he was “cooking dope.”

          Upon
hearing footsteps within the trailer, the officers opened the door and they discovered
Cara Jane Walker hiding inside.  They asked her to step out and as she exited
the trailer, they saw through the doorway materials consistent with methamphetamine
production inside.  While Mitchell and Phariss detained Appellant and Walker,
Cheshire drove into Bowie to get a search warrant.  Upon his return, the
officers executed the warrant, seizing from the trailer components of a full-scale
methamphetamine lab and containers of the drug in liquid and powdered form.  Subsequent
analysis determined that the containers held over 1000 grams of methamphetamine. 
Appellant was arrested and charged with manufacture of a controlled substance. 
In a recorded interview, he confessed to officers that he had been making
methamphetamine in the trailer and that he had manufactured the drug numerous
times before.

          On
March 31, 2009, the trial court appointed attorney Lee Ann Marsh (Counsel) to
represent Appellant.  In letters to the trial court dated May 14, 2009, and January
6, 2010, Appellant asked for a new lawyer, claiming that Counsel had a
“conflict of interest” because he thought she was representing “someone else .
. . associated with [his] cases,” she advised him to tell the state what he
knew about other manufacturers; his family told him she thought seeking a bond
reduction was futile, and the State’s offer was “outrageous.”  The trial court
denied each of these requests and explained in a letter to Appellant dated
January 7, 2010, that although Appellant could discharge his attorney if he had
hired one, he could not terminate appointed counsel.  In a letter to the trial
court filed on January 11, 2010, Appellant stated that he wanted to “fire”
Counsel because he had been “informed” that she would not seek a bond reduction
for him and she had not responded to his letters.

          On
June 22, 2010, the day set for trial, Counsel asked the trial court to grant a
continuance and also to allow her to withdraw.  In support of the former, Counsel
cited her four-and-a-half-day hospital stay earlier that month, asserting that because
of it she had had insufficient time to prepare for trial.  In support of the
latter, she cited Appellant’s desire for the trial court to appoint a different
lawyer.  The trial court denied the motion for continuance.

          Appellant
testified in support of the motion to withdraw that he had found another lawyer
whose personality was more compatible with his and that he believed that this
lawyer could negotiate a better plea-bargain agreement for him and generally provide
better representation than Counsel.  He further testified that the other lawyer
had agreed to take his case and that his family would have the funds to hire the
lawyer “tomorrow.”  The trial court denied the motion and seated the venire.

          During
the guilt-innocence phase of Appellant’s trial, the trial court admitted State’s
Exhibit 41, a DVD recording of Appellant’s sheriff’s office interview in which
he confessed to having manufactured methamphetamine in the trailer on East RC
Road.  In response to Counsel’s objections and with the State’s assent, the
trial court excluded portions of State’s Exhibit 41 during guilt-innocence on
the grounds of unfair prejudice.  After both sides had rested and closed, the
jury returned a verdict of guilty.

          During
the punishment phase, State’s Exhibit 41 was published in its entirety over
Counsel’s objection citing unfair “surprise.”  The jury assessed Appellant’s punishment
at sixty years’ confinement and the trial court imposed sentence accordingly.  Appellant
filed a motion for new trial that included an affidavit from a juror concerning
the outcome of the trial.  The motion was overruled by operation of law.

Motion
to Withdraw

          In
his first point, Appellant contends that the trial court abused its discretion by
not allowing his court-appointed attorney to withdraw and appointing him a new
lawyer on the day of trial.

          The
parties agree that Appellant has no right to an appointed counsel of his
choice.  See Thomas v. State, 550 S.W.2d 64, 68 (Tex. Crim. App. 1977). 
And Appellant concedes that the trial court had no duty to search for an
attorney until it found one suiting Appellant’s liking.  See Malcolm v.
State, 628 S.W.2d 790, 791 (Tex. Crim. App. [Panel Op.] 1982); Rogers v.
State, 488 S.W.2d 833, 834 (Tex. Crim. App. 1973).  Appellant also agrees
with the State that criminal defendants unhappy with their court-appointed
attorneys have the burden of proving to the trial court that they are entitled
to a change, the burden includes requesting a hearing, and personality
conflicts and disagreements concerning trial strategy are typically not valid
grounds for withdrawal.  See King v. State, 29 S.W.3d 556, 566 (Tex.
Crim. App. 2000); Hill v. State, 686 S.W.2d 184, 187 (Tex. Crim. App.
1985); Stovall v. State, 480 S.W.2d 223, 224 (Tex. Crim. App. 1972).

          Appellant
did not request a hearing, so apart from his testimony that we have outlined
above, there is little, if anything, in the record to assist our review of his
claim that the trial court erred by not allowing Counsel to withdraw and appointing
another lawyer.  Despite this handicap, Appellant insists that in Watkins v.
State, 333 S.W.3d 771 (Tex. App.—Waco 2010, pet. ref’d), the Waco Court of
Appeals carved out an exception to the court of criminal appeals’ requirement
that defendants wanting a new lawyer must ask for a hearing and substantiate
their claims with evidence on the record.  Appellant urges that his case is
distinguishable because he “identified particular concerns with his counsel
that if found to be true by the trial court would have been reasonable grounds
for new counsel.”

          Whether
he did or not, however, we do not read Watkins to carve out any
exception to clear precedent issued from the court of criminal appeals that requires
a defendant to ask for a hearing and present evidence to substantiate his
claims. In King v. State, about mid-way through the trial, the appellant
filed a pro se motion requesting that he be allowed to discharge his retained
attorney and employ new counsel.  511 S.W.2d 32, 34 (Tex. Crim. App. 1974).  Neither
the appellant nor his counsel made any effort to present evidence in support of
his motion.  Id.  The appellant claimed on appeal that the trial court had
improperly refused to conduct a hearing to determine whether the appellant was
justified in his desire to discharge his retained attorney.  Id.  The court
of criminal appeals rejected the claim:

Appellant’s
contention is without merit.  Upon presenting his motion [for new counsel],
appellant had a duty to offer evidence in support of it, and to preserve the
evidence and discussions about the motion for review.  This was not done. 
Absent this action, nothing is preserved for review.

 

Id. (footnote
and citation omitted).

          In
Watkins, the Waco Court of Appeals held that the appellant’s motions did
not “contain any facts or particular allegations that rise to the level of
adequate cause for the appointment of a different attorney.”  Watkins,
333 S.W.3d at 775.  Appellant assumes that if the converse were true, i.e. if allegations
in Watkins’ motions had risen to the level of adequate cause, the court would
have held that the trial court had abused its discretion.  But that was not the
case in Watkins:  The Waco court did not hold that the trial court
abused its discretion, and the court of criminal appeals’ holding in King
requiring evidence to justify replacement of trial counsel does not
support the leap Appellant urges us to make.  See King, 511 S.W.2d at 34;
Watkins, 333 S.W.3d at 775.

          Moreover,
we agree with the State that Appellant’s complaints on the record do not amount
to evidence warranting a change in appointed counsel.  As pointed out by the
State, Appellant did not like the idea of using an offer of “turning state’s
evidence” as a negotiating tool, did not like what his family apparently told
him concerning Counsel’s attitude toward seeking a bond reduction, and thought
he found another lawyer he liked better who could work a better deal for him
with the State.  None of these complaints persuade us that the trial court
abused its discretion by refusing to switch lawyers on the day of trial because
none of them are supported by evidence in the record.  For instance, there is
nothing in the record to show that Appellant had any bargaining chips other
than information he might possess about other manufacturers of illegal drugs. 
It appears to us a reasonable negotiating strategy for Appellant to offer
information at his disposal in exchange for a reduced offer from the State. 
Nor is there any evidence in the record that Counsel’s decision regarding
whether to seek a bond reduction was inappropriate.  Again, as a negotiating
strategy, it would have been reasonable for Counsel to focus negotiations on
convincing the State to lower its punishment offer, the ramifications of which
were relatively long-term, rather than expend goodwill on the relatively
short-term matter of bond.  Furthermore, this issue was moot on the day of
trial because Appellant had been released on bond.  As to Appellant’s testimony
that he found another lawyer whose personality was a better fit, we have
already noted Appellant’s concessions that personality conflicts do not support
granting a motion to withdraw.  See King, 29 S.W.3d at 566.  Moreover,
absent support in the record, Appellant’s belief that new counsel could
negotiate a better deal for him appears nothing more than speculative wishful
thinking.

          Although
Appellant testified at the hearing on Counsel’s motion to withdraw, he did not
avail himself of the opportunity to present any evidence to support the trial
court’s granting the motion.  He offered no testimony to substantiate his bare
allegation that Counsel had a conflict of interest because he thought she was
“representing someone else . . . associated with [his] cases.”  His vague and
conclusory charge does not amount to any evidence that Counsel had a true
conflict of interest.  We hold that Appellant did not show that he was entitled
to a different lawyer and that the trial court, therefore, did not abuse its
discretion by not allowing Counsel to withdraw and appointing another lawyer.  See
King, 29 S.W.3d at 566; Childress v. State, 794 S.W.2d 119, 122
(Tex. App.—Houston [1st Dist.] 1990, pet. ref’d); Hill, 686 S.W.2d at
187; Stovall, 480 S.W.2d at 224.  We overrule Appellant’s first point.[3]

Motion
for New Trial

          In
his third point, Appellant contends that the trial court abused its discretion
by not hearing Appellant’s motion for new trial.

          Appellant
timely filed a “Motion for New Trial and Motion in Arrest of Judgment” on July
22, 2010.  The next day, the State responded with a “Controverting Motion,”
asking that the trial court deny the motion for new trial.  The parties agree
that the trial court did not rule on Appellant’s motion and that it was
overruled by operation of law.

          The
trial court’s docket sheet, however, is silent as to whether Appellant
presented his motion for new trial to the trial court.[4]  The motion for new trial, on
its face, “certifies” that it was hand-delivered to the trial court’s office on
the date that it was filed.[5]

          To
preserve an issue by motion for new trial, a defendant must present the motion
to the trial court.  Tex. R. App. P. 21.6.  The defendant cannot merely file
the motion for new trial but must ensure that the trial court has actual notice
of the motion.  Richardson v. State, 328 S.W.3d 61, 72 (Tex. App.—Fort
Worth 2010, pet. ref’d) (citing Carranza v. State, 960 S.W.2d 76, 79
(Tex. Crim. App. 1998)).  The court of criminal appeals has held that the term
“present” in this context means that the record must show the movant for a new
trial sustained the burden of actually delivering the motion to the trial court
or otherwise bringing the motion to the attention or actual notice of the trial
court.  Stokes v. State, 277 S.W.3d 20, 21–22 (Tex. Crim. App. 2009)
(quoting Carranza, 960 S.W.2d at 81 (Overstreet, J., concurring)).  This
may be accomplished in several ways, including for example, obtaining the trial
court’s ruling on a motion for new trial.  Id.

          In
Carranza, the court of criminal appeals expressly overruled Green v.
State to the extent that Green relied on a notation on a proposed
order that could not be attributed to the trial court as being sufficient to
show presentment.  Carranza, 960 S.W.2d at 80 n.6 (overruling Green
v. State, 754 S.W.2d 687 (Tex. Crim. App. 1988)).  On the other hand, in Stokes,
the court of criminal appeals held that it could be presumed that an unsigned
notation on the docket sheet—as opposed to a pleading prepared and filed by the
defendant’s counsel—was made by the trial court or by someone authorized to act
on the trial court’s behalf.  Stokes, 277 S.W.3d at 24.

          This
case is more like Carranza than Stokes.  The docket sheet is
silent on the issue.  It does not bear any notation concerning the motion for
new trial, signed or otherwise.  There is no indication in the record from the
trial court or from anyone authorized to act on the trial court’s behalf that
the motion was actually presented to the trial court.  The only indication that
the trial court had actual notice of Appellant’s motion for new trial appears
on the face of the motion where appellate counsel certified that it was
hand-delivered to the office of the trial court.  A party’s certification
obviously cannot be attributed to the trial court or to someone authorized by
the trial court.  Given the precedents from the court of criminal appeals, we
cannot rely upon appellate counsel’s certification, standing alone, to show
that Appellant has met his burden to prove that the motion was actually
presented.  See Stokes, 277 S.W.3d at 21–22; Carranza, 960 S.W.2d
at 80.

          Finally,
there is no indication that Appellant requested a hearing.  Although the motion
itself makes reference a number of times to a hearing to be held, it contains
no fiat for setting a hearing, and the record otherwise is devoid of any
evidence that Appellant attempted to obtain the trial court’s ruling on the
motion.

          Accordingly,
we hold that the record is insufficient to show that Appellant presented his
motion for new trial to the trial court and we overrule his third point.  See
Carranza, 960 S.W.2d at 80; Richardson, 328 S.W.3d at 72; Washington
v. State, 271 S.W.3d 755, 756 (Tex. App.—Fort Worth 2008, pet. ref’d).

Effectiveness
of Counsel 

          In
his second point, Appellant claims that Counsel rendered ineffective
assistance.  To prevail on this point, Appellant must show by a preponderance
of the evidence that Counsel’s representation fell below the standard of
prevailing professional norms and that there is a reasonable probability that,
but for Counsel’s deficiency, the result of the trial would have been
different.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct.
2052, 2064 (1984); Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim.
App. 2005); Mallett v. State, 65 S.W.3d 59, 62–63 (Tex. Crim. App.
2001); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999); Hernandez v. State, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

          In
evaluating the effectiveness of counsel under the first prong, we look to the
totality of the representation and the particular circumstances of each case.  Thompson,
9 S.W.3d at 813.  The issue is whether Counsel’s assistance was reasonable
under all the circumstances and prevailing professional norms at the time of
the alleged error.  See Strickland, 466 U.S. at 688–89, 104 S. Ct. at
2065.  Review of Counsel’s representation is highly deferential, and we indulge
a strong presumption that her conduct fell within a wide range of reasonable
representation.  Salinas, 163 S.W.3d at 740; Mallett, 65 S.W.3d
at 63.

          Rarely
does the record on direct appeal position an appellate court to fairly evaluate
the merits of an ineffective assistance claim.  Salinas, 163 S.W.3d at
740; Thompson, 9 S.W.3d at 813–14.  “In the majority of cases, the
record on direct appeal is undeveloped and cannot adequately reflect the
motives behind trial counsel’s actions.”  Salinas, 163 S.W.3d at 740
(quoting Mallett, 65 S.W.3d at 63).  To overcome the presumption of
reasonable professional assistance, “any allegation of ineffectiveness must be
firmly founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.”  Id. (quoting Thompson, 9 S.W.3d at
813).  It is not appropriate for us to simply infer ineffective assistance
based upon unclear portions of the record.  Mata v. State, 226 S.W.3d
425, 432 (Tex. Crim. App. 2007).  And we are very reluctant to denounce a
lawyer as ineffective absent an opportunity for the lawyer to explain his or
her actions on the record.  See Rylander v. State, 101 S.W.3d 107, 111
(Tex. Crim. App. 2003); Goodspeed v. State, 187 S.W.3d 390, 391 (Tex.
Crim. App. 2005) (holding that inquiry into counsel’s conduct—failure to ask
any questions during voir dire and exercise of peremptory challenges on jurors
who had already been excused—was needed to determine whether performance was
deficient).

          For
these reasons, the court of criminal appeals and this court have often stated
that ineffective assistance claims are usually best addressed by a post-conviction
writ of habeas corpus.  See Ex parte White, 160 S.W.3d 46, 49 n.1 (Tex.
Crim. App. 2004); Thompson, 9 S.W.3d at 814 & n.6; Ex parte
Torres, 943 S.W.2d 469, 475–76 (Tex. Crim. App. 1997); Lopez v. State,
80 S.W.3d 624, 630 (Tex. App.—Fort Worth 2002), aff’d, 108 S.W.3d 293 (Tex.
Crim. App. 2003); Ramirez v. State, No. 02-08-00396-CR, 2009 WL 3490875,
at *1 n.4 (Tex. App.—Fort Worth Oct. 29, 2009, no pet.) (mem. op., not
designated for publication).

          The
case before us is yet another example where this is true.  Specifically,
Appellant claims that Counsel’s performance was deficient because she failed to
adequately prepare for trial, failed to adequately object to inadmissible
evidence at the punishment phase, and failed to present evidence that Appellant
did not have a criminal history at the time of trial.  He argues that these
deficiencies created a harmful atmosphere, put him in no-win situation, placed
“highly prejudicial, uncorroborated evidence” before the jury, and—based on an
affidavit submitted by one juror—affected the jury’s punishment decision.

          Although
Appellant filed a motion for new trial raising ineffective assistance, as
discussed above, he did not present his motion to the trial court so that the
trial court could have set a hearing that would have allowed Counsel to explain
any trial strategy upon which her decisions may have been based.  We are not
required to indulge in speculation concerning Counsel’s decision-making
processes or to imagine reasons why she acted or failed to act in a particular
manner.  Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); Lopez,
80 S.W.3d at 630.  When the record is silent as to an attorney’s reasons for
performing or failing to perform in the manner alleged, we cannot conclude that
the attorney’s performance was deficient.  See Jackson, 877 S.W.2d at
771; Lopez, 80 S.W.3d at 630.  Appellant has failed to properly present
his motion for new trial and obtain a setting for a hearing that would have
allowed for the development of the issue and a ruling by the trial court.  As a
result, there is no record before us upon which we might consider this issue. 
Because there is no record to show Counsel’s reasons for acting or failing to
act in the manner challenged by Appellant, we hold that Appellant has failed to
establish that Counsel’s representation was ineffective.  See Lopez, 80
S.W.3d at 630.  His claim, therefore, fails on Strickland’s first
prong.  See Strickland, 466 U.S. at 688–89, 104 S. Ct. at 2065. 
Accordingly, we overrule Appellant’s second point.

Conclusion

          Having
overruled all of Appellant’s points, we affirm the trial court’s judgment.

 

LEE GABRIEL
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; McCOY and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 25, 2011









          [1]See Tex. R. App. P. 47.4.





[2]See Tex. Health
& Safety Code Ann. § 481.112(a), (f) (West 2010).





[3]As to Appellant’s
additional argument regarding denial of Counsel’s motion for a continuance, the
motion––oral and unsworn––preserved nothing for our review.  Tex. Code Crim. Proc.
Ann. art. 29.03 (West 2006); Anderson v. State, 301 S.W.3d 276, 277
(Tex. Crim. App. 2009).  Moreover, even if a claim had been preserved, it was
well within the trial court’s discretion to deny this eleventh-hour motion
urged solely on the ground that Counsel, who had represented Appellant for over
a year before trial, was not adequately prepared because she had spent a few
days in the hospital a couple of weeks before trial.





[4]The last notation on the
docket sheet is dated June 24, 2010, a month before Appellant filed his motion
for new trial.





[5]Beneath appellate
counsel’s signature on the motion for new trial appears a “Certificate of
Presentment.”  It states, “By signature above, I hereby certify that a true and
correct copy of the above and foregoing has been hand-delivered to the Office for
the 97th Judicial District Court of Montague County, on this day, July 22,
2010.”