

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00398-CR

CODY LEROY MOORE                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

## FROM THE 97TH DISTRICT COURT OF MONTAGUE COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Cody Leroy Moore appeals his conviction for manufacturing more than 400 grams of methamphetamine.[2]  We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Health & Safety Code Ann. § 481.112(a), (f) (West 2010).

**Background Facts and Procedural History**

On March 12, 2009, the Montague County Sheriff's Department dispatched Deputies Jonathan Cheshire and Lee Phariss to investigate a suspicious odor reported near East RC Road in rural Montague County. When the deputies reached the area, Cheshire detected a strong odor that he recognized from his training and experience as ether. He and Phariss tracked the odor to a metal travel trailer wedged inside a garage at the only residence in the area. The residence appeared empty, but there was a light on inside the trailer and the surrounding area smelled strongly of ether. Cheshire knew from his training and experience investigating clandestine drug labs that ether was associated with the illicit production of methamphetamine. Cheshire's supervisor, Chief Deputy J.T. Mitchell, had instructed all officers in the department to alert him whenever they encountered a potential drug lab. Cheshire called Mitchell, and when Mitchell arrived the officers approached the trailer and knocked on the door. Appellant emerged from within the trailer with his hands in the air. Cheshire asked him if he had been manufacturing methamphetamine, to which Appellant replied that he was "cooking dope."

Upon hearing footsteps within the trailer, the officers opened the door and they discovered Cara Jane Walker hiding inside. They asked her to step out and as she exited the trailer, they saw through the doorway materials consistent with methamphetamine production inside. While Mitchell and Phariss detained Appellant and Walker, Cheshire drove into Bowie to get a search warrant. Upon

2

his return, the officers executed the warrant, seizing from the trailer components of a full-scale methamphetamine lab and containers of the drug in liquid and powdered form. Subsequent analysis determined that the containers held over 1000 grams of methamphetamine. Appellant was arrested and charged with manufacture of a controlled substance. In a recorded interview, he confessed to officers that he had been making methamphetamine in the trailer and that he had manufactured the drug numerous times before.

On March 31, 2009, the trial court appointed attorney Lee Ann Marsh (Counsel) to represent Appellant. In letters to the trial court dated May 14, 2009, and January 6, 2010, Appellant asked for a new lawyer, claiming that Counsel had a "conflict of interest" because he thought she was representing "someone else . . . associated with [his] cases," she advised him to tell the state what he knew about other manufacturers; his family told him she thought seeking a bond reduction was futile, and the State's offer was "outrageous." The trial court denied each of these requests and explained in a letter to Appellant dated January 7, 2010, that although Appellant could discharge his attorney if he had hired one, he could not terminate appointed counsel. In a letter to the trial court filed on January 11, 2010, Appellant stated that he wanted to "fire" Counsel because he had been "informed" that she would not seek a bond reduction for him and she had not responded to his letters.

On June 22, 2010, the day set for trial, Counsel asked the trial court to grant a continuance and also to allow her to withdraw. In support of the former,

3

Counsel cited her four-and-a-half-day hospital stay earlier that month, asserting that because of it she had had insufficient time to prepare for trial. In support of the latter, she cited Appellant's desire for the trial court to appoint a different lawyer. The trial court denied the motion for continuance.

Appellant testified in support of the motion to withdraw that he had found another lawyer whose personality was more compatible with his and that he believed that this lawyer could negotiate a better plea-bargain agreement for him and generally provide better representation than Counsel. He further testified that the other lawyer had agreed to take his case and that his family would have the funds to hire the lawyer "tomorrow." The trial court denied the motion and seated the venire.

During the guilt-innocence phase of Appellant's trial, the trial court admitted State's Exhibit 41, a DVD recording of Appellant's sheriff's office interview in which he confessed to having manufactured methamphetamine in the trailer on East RC Road. In response to Counsel's objections and with the State's assent, the trial court excluded portions of State's Exhibit 41 during guilt-innocence on the grounds of unfair prejudice. After both sides had rested and closed, the jury returned a verdict of guilty.

During the punishment phase, State's Exhibit 41 was published in its entirety over Counsel's objection citing unfair "surprise." The jury assessed Appellant's punishment at sixty years' confinement and the trial court imposed sentence accordingly. Appellant filed a motion for new trial that included an

4

affidavit from a juror concerning the outcome of the trial. The motion was overruled by operation of law.

## Motion to Withdraw

In his first point, Appellant contends that the trial court abused its discretion by not allowing his court-appointed attorney to withdraw and appointing him a new lawyer on the day of trial.

The parties agree that Appellant has no right to an appointed counsel of his choice. *See Thomas v. State*, 550 S.W.2d 64, 68 (Tex. Crim. App. 1977). And Appellant concedes that the trial court had no duty to search for an attorney until it found one suiting Appellant's liking. *See Malcolm v. State*, 628 S.W.2d 790, 791 (Tex. Crim. App. [Panel Op.] 1982); *Rogers v. State*, 488 S.W.2d 833, 834 (Tex. Crim. App. 1973). Appellant also agrees with the State that criminal defendants unhappy with their court-appointed attorneys have the burden of proving to the trial court that they are entitled to a change, the burden includes requesting a hearing, and personality conflicts and disagreements concerning trial strategy are typically not valid grounds for withdrawal. *See King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000); *Hill v. State*, 686 S.W.2d 184, 187 (Tex. Crim. App. 1985); *Stovall v. State*, 480 S.W.2d 223, 224 (Tex. Crim. App. 1972).

Appellant did not request a hearing, so apart from his testimony that we have outlined above, there is little, if anything, in the record to assist our review of his claim that the trial court erred by not allowing Counsel to withdraw and appointing another lawyer. Despite this handicap, Appellant insists that in

5

*Watkins v. State*, 333 S.W.3d 771 (Tex. App.—Waco 2010, pet. ref'd), the Waco Court of Appeals carved out an exception to the court of criminal appeals' requirement that defendants wanting a new lawyer must ask for a hearing and substantiate their claims with evidence on the record. Appellant urges that his case is distinguishable because he "identified particular concerns with his counsel that if found to be true by the trial court would have been reasonable grounds for new counsel."

Whether he did or not, however, we do not read *Watkins* to carve out any exception to clear precedent issued from the court of criminal appeals that requires a defendant to ask for a hearing and present evidence to substantiate his claims. In *King v. State*, about mid-way through the trial, the appellant filed a pro se motion requesting that he be allowed to discharge his retained attorney and employ new counsel. 511 S.W.2d 32, 34 (Tex. Crim. App. 1974). Neither the appellant nor his counsel made any effort to present evidence in support of his motion. *Id.* The appellant claimed on appeal that the trial court had improperly refused to conduct a hearing to determine whether the appellant was justified in his desire to discharge his retained attorney. *Id.* The court of criminal appeals rejected the claim:

> Appellant's contention is without merit. Upon presenting his motion [for new counsel], appellant had a duty to offer evidence in support of it, and to preserve the evidence and discussions about the motion for review. This was not done. Absent this action, nothing is preserved for review.

*Id*. (footnote and citation omitted).

6

In *Watkins*, the Waco Court of Appeals held that the appellant's motions did not "contain any facts or particular allegations that rise to the level of adequate cause for the appointment of a different attorney." *Watkins*, 333 S.W.3d at 775. Appellant assumes that if the converse were true, i.e. if allegations in Watkins' motions had risen to the level of adequate cause, the court would have held that the trial court had abused its discretion. But that was not the case in *Watkins:* The Waco court did not hold that the trial court abused its discretion, and the court of criminal appeals' holding in *King* requiring *evidence* to justify replacement of trial counsel does not support the leap Appellant urges us to make. *See King*, 511 S.W.2d at 34; *Watkins*, 333 S.W.3d at 775.

Moreover, we agree with the State that Appellant's complaints on the record do not amount to evidence warranting a change in appointed counsel. As pointed out by the State, Appellant did not like the idea of using an offer of "turning state's evidence" as a negotiating tool, did not like what his family apparently told him concerning Counsel's attitude toward seeking a bond reduction, and thought he found another lawyer he liked better who could work a better deal for him with the State. None of these complaints persuade us that the trial court abused its discretion by refusing to switch lawyers on the day of trial because none of them are supported by evidence in the record. For instance, there is nothing in the record to show that Appellant had any bargaining chips other than information he might possess about other manufacturers of illegal

7

drugs. It appears to us a reasonable negotiating strategy for Appellant to offer information at his disposal in exchange for a reduced offer from the State. Nor is there any evidence in the record that Counsel's decision regarding whether to seek a bond reduction was inappropriate. Again, as a negotiating strategy, it would have been reasonable for Counsel to focus negotiations on convincing the State to lower its punishment offer, the ramifications of which were relatively long-term, rather than expend goodwill on the relatively short-term matter of bond. Furthermore, this issue was moot on the day of trial because Appellant had been released on bond. As to Appellant's testimony that he found another lawyer whose personality was a better fit, we have already noted Appellant's concessions that personality conflicts do not support granting a motion to withdraw. *See King*, 29 S.W.3d at 566. Moreover, absent support in the record, Appellant's belief that new counsel could negotiate a better deal for him appears nothing more than speculative wishful thinking.

Although Appellant testified at the hearing on Counsel's motion to withdraw, he did not avail himself of the opportunity to present any evidence to support the trial court's granting the motion. He offered no testimony to substantiate his bare allegation that Counsel had a conflict of interest because he thought she was "representing someone else . . . associated with [his] cases." His vague and conclusory charge does not amount to any evidence that Counsel had a true conflict of interest. We hold that Appellant did not show that he was entitled to a different lawyer and that the trial court, therefore, did not abuse its

8

discretion by not allowing Counsel to withdraw and appointing another lawyer. *See King*, 29 S.W.3d at 566; *Childress v. State*, 794 S.W.2d 119, 122 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd); *Hill*, 686 S.W.2d at 187; *Stovall*, 480 S.W.2d at 224. We overrule Appellant's first point.[3]

## Motion for New Trial

In his third point, Appellant contends that the trial court abused its discretion by not hearing Appellant's motion for new trial.

Appellant timely filed a "Motion for New Trial and Motion in Arrest of Judgment" on July 22, 2010. The next day, the State responded with a "Controverting Motion," asking that the trial court deny the motion for new trial. The parties agree that the trial court did not rule on Appellant's motion and that it was overruled by operation of law.

The trial court's docket sheet, however, is silent as to whether Appellant presented his motion for new trial to the trial court.[4] The motion for new trial, on

---

[3]As to Appellant's additional argument regarding denial of Counsel's motion for a continuance, the motion—oral and unsworn—preserved nothing for our review. Tex. Code Crim. Proc. Ann. art. 29.03 (West 2006); *Anderson v. State*, 301 S.W.3d 276, 277 (Tex. Crim. App. 2009). Moreover, even if a claim had been preserved, it was well within the trial court's discretion to deny this eleventh-hour motion urged solely on the ground that Counsel, who had represented Appellant for over a year before trial, was not adequately prepared because she had spent a few days in the hospital a couple of weeks before trial.

[4]The last notation on the docket sheet is dated June 24, 2010, a month before Appellant filed his motion for new trial.

9

its face, "certifies" that it was hand-delivered to the trial court's office on the date that it was filed.[5]

To preserve an issue by motion for new trial, a defendant must present the motion to the trial court. Tex. R. App. P. 21.6. The defendant cannot merely file the motion for new trial but must ensure that the trial court has actual notice of the motion. *Richardson v. State*, 328 S.W.3d 61, 72 (Tex. App.—Fort Worth 2010, pet. ref'd) (citing *Carranza v. State*, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998)). The court of criminal appeals has held that the term "present" in this context means that the record must show the movant for a new trial sustained the burden of actually delivering the motion to the trial court or otherwise bringing the motion to the attention or actual notice of the trial court. *Stokes v. State*, 277 S.W.3d 20, 21–22 (Tex. Crim. App. 2009) (quoting *Carranza*, 960 S.W.2d at 81 (Overstreet, J., concurring)). This may be accomplished in several ways, including for example, obtaining the trial court's ruling on a motion for new trial. *Id*.

In *Carranza*, the court of criminal appeals expressly overruled *Green v. State* to the extent that *Green* relied on a notation on a proposed order that could not be attributed to the trial court as being sufficient to show presentment.

---

[5]Beneath appellate counsel's signature on the motion for new trial appears a "Certificate of Presentment." It states, "By signature above, I hereby certify that a true and correct copy of the above and foregoing has been hand-delivered to the Office for the 97th Judicial District Court of Montague County, on this day, July 22, 2010."

*Carranza*, 960 S.W.2d at 80 n.6 (overruling *Green v. State*, 754 S.W.2d 687 (Tex. Crim. App. 1988)). On the other hand, in *Stokes*, the court of criminal appeals held that it could be presumed that an unsigned notation on the docket sheet—as opposed to a pleading prepared and filed by the defendant's counsel—was made by the trial court or by someone authorized to act on the trial court's behalf. *Stokes*, 277 S.W.3d at 24.

This case is more like *Carranza* than *Stokes*. The docket sheet is silent on the issue. It does not bear any notation concerning the motion for new trial, signed or otherwise. There is no indication in the record from the trial court or from anyone authorized to act on the trial court's behalf that the motion was actually presented to the trial court. The only indication that the trial court had actual notice of Appellant's motion for new trial appears on the face of the motion where appellate counsel certified that it was hand-delivered to the office of the trial court. A party's certification obviously cannot be attributed to the trial court or to someone authorized by the trial court. Given the precedents from the court of criminal appeals, we cannot rely upon appellate counsel's certification, standing alone, to show that Appellant has met his burden to prove that the motion was actually presented. *See Stokes*, 277 S.W.3d at 21–22; *Carranza*, 960 S.W.2d at 80.

Finally, there is no indication that Appellant requested a hearing. Although the motion itself makes reference a number of times to a hearing to be held, it

11

contains no fiat for setting a hearing, and the record otherwise is devoid of any evidence that Appellant attempted to obtain the trial court's ruling on the motion.

Accordingly, we hold that the record is insufficient to show that Appellant presented his motion for new trial to the trial court and we overrule his third point. *See Carranza*, 960 S.W.2d at 80; *Richardson*, 328 S.W.3d at 72; *Washington v. State*, 271 S.W.3d 755, 756 (Tex. App.—Fort Worth 2008, pet. ref'd).

## Effectiveness of Counsel

In his second point, Appellant claims that Counsel rendered ineffective assistance. To prevail on this point, Appellant must show by a preponderance of the evidence that Counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for Counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether Counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065.

12

Review of Counsel's representation is highly deferential, and we indulge a strong presumption that her conduct fell within a wide range of reasonable representation.  *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63.

Rarely does the record on direct appeal position an appellate court to fairly evaluate the merits of an ineffective assistance claim.  *Salinas*, 163 S.W.3d at 740; *Thompson*, 9 S.W.3d at 813–14.  "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions."  *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63).  To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness."  *Id.* (quoting *Thompson*, 9 S.W.3d at 813).  It is not appropriate for us to simply infer ineffective assistance based upon unclear portions of the record.  *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).  And we are very reluctant to denounce a lawyer as ineffective absent an opportunity for the lawyer to explain his or her actions on the record.  *See Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003); *Goodspeed v. State*, 187 S.W.3d 390, 391 (Tex. Crim. App. 2005) (holding that inquiry into counsel's conduct—failure to ask any questions during voir dire and exercise of peremptory challenges on jurors who had already been excused—was needed to determine whether performance was deficient).

For these reasons, the court of criminal appeals and this court have often stated that ineffective assistance claims are usually best addressed by a post-conviction writ of habeas corpus. *See Ex parte White*, 160 S.W.3d 46, 49 n.1 (Tex. Crim. App. 2004); *Thompson*, 9 S.W.3d at 814 & n.6; *Ex parte Torres*, 943 S.W.2d 469, 475–76 (Tex. Crim. App. 1997); *Lopez v. State*, 80 S.W.3d 624, 630 (Tex. App.—Fort Worth 2002), *aff'd*, 108 S.W.3d 293 (Tex. Crim. App. 2003); *Ramirez v. State*, No. 02-08-00396-CR, 2009 WL 3490875, at *1 n.4 (Tex. App.—Fort Worth Oct. 29, 2009, no pet.) (mem. op., not designated for publication).

The case before us is yet another example where this is true. Specifically, Appellant claims that Counsel's performance was deficient because she failed to adequately prepare for trial, failed to adequately object to inadmissible evidence at the punishment phase, and failed to present evidence that Appellant did not have a criminal history at the time of trial. He argues that these deficiencies created a harmful atmosphere, put him in no-win situation, placed "highly prejudicial, uncorroborated evidence" before the jury, and—based on an affidavit submitted by one juror—affected the jury's punishment decision.

Although Appellant filed a motion for new trial raising ineffective assistance, as discussed above, he did not present his motion to the trial court so that the trial court could have set a hearing that would have allowed Counsel to explain any trial strategy upon which her decisions may have been based. We are not required to indulge in speculation concerning Counsel's decision-making

14

processes or to imagine reasons why she acted or failed to act in a particular manner. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Lopez*, 80 S.W.3d at 630. When the record is silent as to an attorney's reasons for performing or failing to perform in the manner alleged, we cannot conclude that the attorney's performance was deficient. *See Jackson*, 877 S.W.2d at 771; *Lopez*, 80 S.W.3d at 630. Appellant has failed to properly present his motion for new trial and obtain a setting for a hearing that would have allowed for the development of the issue and a ruling by the trial court. As a result, there is no record before us upon which we might consider this issue. Because there is no record to show Counsel's reasons for acting or failing to act in the manner challenged by Appellant, we hold that Appellant has failed to establish that Counsel's representation was ineffective. *See Lopez*, 80 S.W.3d at 630. His claim, therefore, fails on *Strickland's* first prong. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Accordingly, we overrule Appellant's second point.

15

**Conclusion**

Having overruled all of Appellant's points, we affirm the trial court's judgment.

LEE GABRIEL<br>
JUSTICE

PANEL:  LIVINGSTON, C.J.; McCOY and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 25, 2011