

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-09-195-CR

WILLIAM RICHARDSON                                    APPELLANT

V.

THE STATE OF TEXAS                                        STATE

------------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

## OPINION

------------

### I. Introduction

In four issues, Appellant William Richardson appeals his conviction for fraudulent use or possession of identifying information. We affirm

### II. Factual and Procedural Background

In the early morning hours of December 4, 2007, Flower Mound Police Officer Nick Hill pulled over a vehicle for a traffic violation. Officer Hill approached and made contact with the driver, identified as Richardson by his driver's license and insurance. After making contact with the passenger, Gary Wayne Webster, Officer

Hill instructed Richardson to stand at the rear of the vehicle while he ran a standard computer check. The computer check returned an outstanding warrant for Richardson. Officer Hill, requested a back-up unit and asked dispatch for confirmation on Richardson's warrant. The back-up unit, driven by Officer Ben Lippens, arrived almost immediately.

While Officer Lippens kept an eye on Webster, Officer Hill questioned Richardson. He asked whether Richardson owned the vehicle he was driving; Richardson responded that the car belonged to his mother. Officer Hill also asked, "Do you have any problem if I take a look in your car?" Richardson responded that he did not. Shortly thereafter, dispatch confirmed the warrant, and Officer Hill arrested Richardson and seated him in the backseat of his patrol unit.

The Officers then removed Webster from the front passenger seat and searched the vehicle, discovering a Wal-Mart bag in the driver's seat containing a clear plastic wallet insert with a social security card, a Unicard, a Visa card, and a Texas Department of Human Services card, all bearing the name Burgie Davis. The bag also contained Wal-Mart gift cards still attached to their original cardboard backing and a receipt from the Fairfield Inn in Richardson's name. In the center console, the officers discovered another bag containing more gift cards.

The officers found a laptop computer and a clear plastic box on the front passenger side floorboard. The box contained transparency graphing paper; razor blades; glues and adhesives; gift cards; and drivers' licenses, identifications, and

2

keychain credit cards, all belonging to individuals other than Richardson or Webster, including some that belonged to Burgie Davis. On the driver's side backseat floorboard, the officers discovered a red plastic folder containing, among other items, a list of The Sun Shop's customers and their financial information (The Sun Shop list); pictures of Webster; a document from a website discussing magnetic strip readers; and hotel receipts with credit card information on individuals other than Richardson or Webster. On the middle rear floorboard, the officers found a small photo printer that was attached to a laptop computer (belonging to Webster) and to a power inverter plugged into the cigarette lighter. The officers also discovered a Nikon camera, a cell phone, CDs, and DVDs in the backseat. In the trunk, the officers found an aluminum box containing razor blades, white-out, hard drives for laptops, glue, a screwdriver, batteries, scissors, and printer cartridges.

After searching the vehicle, Officer Hill transported Richardson to the jail. A wallet found in Richardson's back pocket contained a business card for The Sun Shop, clear graphing transparency paper, and receipts showing purchases made using a Visa card discovered in the clear plastic box found on the front floorboard. The State charged Richardson with fraudulent possession of identifying information for over fifty individuals (specifically those on The Sun Shop list) and included an enhancement paragraph for a prior felony conviction—aggravated assault on a peace officer.

3

At trial, in addition to both Officer Hill and Officer Lippens testifying to the facts stated above, Kelly Wood, an ex-employee of The Sun Shop, testified that she had stolen billing lists from The Sun Shop, taken them to Webster's house, assisted Webster and Richardson in making fraudulent cards from the billing lists, and that she, Richardson, and Webster had used the fraudulent cards to shop. Wood also testified that she went to Webster's house to "get high" on methamphetamine. She further stated that Richardson and Webster were roommates and that Richardson was Webster's driver.

Elizabeth Herring, The Sun Shop's manager, confirmed that the list found in the vehicle was, in fact, one of The Sun Shop's billing lists. Herring testified that The Sun Shop's employees were not allowed to give out its customers credit card information to third parties—she specifically testified that neither Wood, Richardson, nor Webster had permission to have The Sun Shop's billing list. She further testified that she recognized fifty-seven specific customers on the list and that none of them had given their permission for The Sun Shop to share their information.

The owner of The Sun Shop, Dennis Sheldon, also testified that the business was not allowed to, and did not, give anyone permission to have The Sun Shop's billing lists. Sheldon confirmed Wood's dates of employment and also confirmed that Wood had stolen billing lists from The Sun Shop.

Jesse Basham, an FBI computer forensic examiner, testified that the laptop found in the vehicle contained photographs, signature strips, driver's license

4

templates, university ID cards, credit card numbers, and social security numbers for individuals other than Richardson or Webster.

At the close of evidence, the jury found Richardson guilty of fraudulent use or possession of identifying information for over fifty individuals (specifically those individuals on The Sun Shop list). During the punishment phase, Richardson pleaded true to the enhancement paragraph in the indictment—aggravated assault on a peace officer—and he also stipulated that he had a previous felony conviction for driving while intoxicated (DWI), along with two other DWI convictions. The jury assessed punishment at life, and the trial court sentenced Richardson accordingly. This appeal followed.

### III. Sufficiency of the Evidence

In his second issue, Richardson argues that the evidence is legally and factually insufficient to support his conviction.

### A. Fraudulent Use or Possession of Identifying Information

Under § 32.51 of the penal code, a person commits fraudulent use or possession of identifying information, if the person, with the intent to harm or defraud another, obtains, possesses, transfers, or uses an item of identifying information of another person without the other person's consent. Tex. Pen. Code Ann. § 32.51(b) (Vernon Supp. 2008). Because Richardson only challenges the sufficiency of the evidence to show that "he was in 'possession' of [The Sun Shop list]," we limit our discussion to address only the possession element of the offense.

5

This appears to be a case of first impression. We, like the parties, were unable to find any prior case law addressing a sufficiency challenge to the possession element of fraudulent use or possession of identifying information. However, we agree with the parties that the proper law to apply in this case is the body of law pertaining to affirmative links developed in controlled substance cases. *See Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006) (discussing the affirmative links rule and pointing out that the purpose of the rule is to protect the innocent bystander, relative, roommate, or friend from conviction merely by their proximity to another's contraband).[1] Therefore, we apply the linking rule to determine whether the evidence was legally and factually sufficient to show that Richardson was in possession of The Sun Shop list.

## B. Linked to Contraband

To prove possession, the State must show the accused (1) exercised control, management, or care over the contraband and (2) knew the matter possessed was contraband. *Evans*, 202 S.W.3d at 161; *Cuong Quoc Ly v. State*, 273 S.W.3d 778, 781 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). Possession may be proved through either direct or circumstantial evidence. *Poindexter v. State*, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005); *see also Rice v. State*, 195 S.W.3d 876, 881

---

[1] While reviewing courts previously referred to the necessary connection between an accused and contraband as "affirmative links," we now refer to these connections simply as "links." *See Evans*, 202 S.W.3d at 161 n.9.

6

(Tex. App.—Dallas 2006, pet. ref'd) (stating jury could infer knowing or intentional possession of contraband).

When, as here, the accused is not in exclusive possession or control of the place where contraband is discovered, the State must show additional facts and circumstances linking the accused to the contraband to show the accused's knowledge of or control over the contraband. *Poindexter*, 153 S.W.3d at 406; *Grisso v. State*, 264 S.W.3d 351, 355 (Tex. App.—Waco 2008, no pet.). We consider the totality of the circumstances when determining whether the accused is linked to the recovered contraband. *See Hyett v. State*, 58 S.W.3d 826, 830 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). The accused's connection with the contraband must be "more than just fortuitous." *Poindexter*, 153 S.W.3d at 405–06. The accused's presence at the scene where contraband is found is insufficient, by itself, to establish possession. *Evans*, 202 S.W.3d at 162. However, presence or proximity combined with other direct or circumstantial evidence (e.g., "links") may be sufficient to establish the elements of possession beyond a reasonable doubt. *Id.*

Reviewing courts have developed several factors showing a possible link between the accused and contraband, including: (1) the accused's presence when the search was conducted, (2) whether the contraband was in plain view, (3) the accused's proximity to and the accessibility of the contraband, (4) whether the accused possessed other contraband when arrested, (5) whether the accused made incriminating statements when arrested, (6) whether the accused owned or had the

7

right to possess the place where the contraband was found, (7) whether the contraband was found in an enclosed place, and (8) whether the conduct of the accused indicated a consciousness of guilt. *See Cuong Quoc Ly*, 273 S.W.3d at 781–82; *Grisso*, 264 S.W.3d at 355. The number of linking factors present is not as important as the "logical force" they create to prove the accused knowingly or intentionally possessed the controlled substance. *Evans*, 202 S.W.3d at 162; *see also Roberson v. State*, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (recognizing proof of links between the accused and contraband "generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it").

## C. Legal Sufficiency

### 1. Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

### 2. Analysis

8

Here, although Richardson was not alone in the vehicle at the time of the stop, he was the driver of the vehicle and the vehicle belonged to his mother. Thus, Richardson was in possession and control of the vehicle.

In addition to Richardson's control over the vehicle, there are several other factors linking him to The Sun Shop list found in the vehicle, including: (1) Wood's testimony that Richardson knew of the billing lists from The Sun Shop and that Richardson had assisted in making fraudulent cards from the billing lists; (2) Wood's testimony that Richardson had used the fraudulent cards to shop; (3) The Sun Shop list's proximity to Richardson—that is, the backseat floorboard on the driver's side; (4) Richardson's wallet, which contained a business card from The Sun Shop in addition to clear graphing transparency paper and receipts linking him to the clear plastic box found in the front floorboard of the vehicle; (5) the clear plastic box, which contained transparency graphing paper; razor blades; glues and adhesives; gift cards; and drivers' licenses, identifications, and keychain credit cards, all belonging to individuals other than Richardson or Webster; (6) credit cards inside the center console; and (7) the laptop computer and photo printer plugged into the cigarette lighter, which contained templates for creating fraudulent identifications.

Based on the direct and circumstantial evidence presented here, we hold that a reasonable jury could conclude beyond a reasonable doubt that Richardson knowingly exercised joint possession and control over The Sun Shop list along with

Webster. Thus, the evidence is legally sufficient to support the verdict. Accordingly, we overrule this portion of Richardson's second issue.

## D. Factual Sufficiency

### 1. Standard of Review

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts verdict. *Watson*, 204 S.W.3d at 417.

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246.

10

Evidence is always factually sufficient when it preponderates in favor of the conviction. *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

### 2. Analysis

Richardson combined his legal and factual sufficiency challenges together in a single issue. We construe Richardson's argument to challenge the factual sufficiency of the evidence on two grounds: (1) the folder containing The Sun Shop list clearly belonged to Webster and (2) he would not have consented to the search of the vehicle had he known about the list.

Viewing the evidence neutrally, we recognize that the folder containing The Sun Shop list also contained items linking it to Webster and that Richardson consented to the search of his vehicle. However, Richardson was the driver of a vehicle that was full of evidence relating to an identity theft scam—that is, identifying information for individuals other than Richardson or Webster, blank credit cards, transparency paper, and a laptop computer and printer capable of creating fraudulent identifications. There was also evidence in Richardson's wallet connecting him to evidence within the vehicle that related to the identity theft scam. *See Wootton v. State*, 132 S.W.3d 80, 89–90 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (holding factually sufficient evidence existed that appellant knew tanks contained anhydrous ammonia when appellant's truck, where the tanks were found, also contained many other ingredients used to manufacture methamphetamine).

Moreover, there was testimony that Richardson knew of The Sun Shop list and that he made fraudulent cards from the list, which he later used.

In light of the evidence supporting the jury's verdict, we conclude that the evidence is not so obviously weak that the verdict is clearly wrong and manifestly unjust or that the proof of guilt is against the great weight and preponderance of the evidence. *See Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417. Therefore, we hold that the evidence is factually sufficient to support Richardson's conviction. Accordingly, we overrule the remaining portion of Richardson's second issue.

## IV.  Corroboration Evidence

In his first issue, Richardson asserts that, apart from Wood's accomplice testimony, there is insufficient evidence linking him to the crime. We disagree.

## A.  Accomplice-Witness Rule

"Article 38.14 [of the Texas Code of Criminal Procedure] provides that a defendant cannot be convicted of an offense upon the testimony of an accomplice without other corroborating evidence 'tending to connect' the defendant to the offense." *Simmons v. State*, 282 S.W.3d 504, 505 (Tex. Crim. App. 2009). In determining the sufficiency of non-accomplice evidence to corroborate accomplice testimony, the proper appellate standard is "whether a rational fact-finder could conclude that the non-accomplice evidence 'tends to connect' appellant to the offense." *Id.* at 509; *see Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App.

12

2008) (explaining that the accomplice-witness rule "requires that, before a conviction may rest upon the testimony of an accomplice witness, the accomplice's testimony must be corroborated by independent evidence tending to connect the accused with the crime"). Non-accomplice evidence must not be taken as isolated facts, but rather considered together as a whole, and if the force of the evidence is such, as a whole, that it tends to connect the defendant to the offense, then it is sufficient. *Simmons*, 282 S.W.3d at 511. "The corroborative evidence, however, need not be sufficient in itself to establish guilt, nor must it directly link the accused to the commission of the offense." *Brown*, 270 S.W.3d at 567. "We view the evidence in the light most favorable to the jury's verdict." *Id.*

## B. Non-accomplice Evidence

The non-accomplice evidence in this case consisted of (1) Richardson driving a vehicle which contained among other things:

(a) a Wal-Mart bag containing a clear plastic wallet insert with a social security card, a Unicard, a Visa card, and a Texas Department of Human Services card, all bearing the name Burgie Davis; Wal-Mart gift cards still attached to their original cardboard backing; and a receipt from the Fairfield Inn in Richardson's name;

(b) a clear plastic box in the floorboard on the front passenger side containing transparency graphing paper; razor blades; glues and adhesives; gift cards; drivers' licenses, identifications, and keychain credit cards, all belonging to individuals other than Richardson or Webster, including some that belonged to Burgie Davis;

(c) a bag in the center console containing more gift cards;

13

(d) a red plastic folder in the backseat floorboard on the driver's side containing The Sun Shop list; and

(e) a small photo printer in the middle rear floorboard of the vehicle attached to both a laptop computer and a power inverter plugged into the cigarette lighter,

(2) a wallet in Richardson's back pocket containing a business card for The Sun Shop, clear graphing transparency paper, and receipts showing purchases made using a Visa card discovered in the clear plastic box found in the front floorboard of the vehicle, (3) expert testimony that the laptop contained photographs, signature strips, driver's license templates, university ID cards, credit card numbers, and social security numbers of individuals other than Richardson or Webster, and (4) testimony that The Sun Shop list was in fact The Sun Shop's billing list, which neither Richardson nor Webster had permission to possess.

## C. Analysis

In sum, Richardson was driving a vehicle that had fraudulent identifying information all throughout it—some of which was in plain view. There were receipts bearing Richardson's name in a bag containing identifying information belonging to someone other than Richardson or Webster. A laptop computer with the capability of creating fraudulent identifications was attached to a power inverter plugged into the vehicle's cigarette lighter. And, Richardson's wallet contained a business card from The Sun Shop in addition to receipts that connected him to the plastic box found in the vehicle's front passenger floorboard, which contained fraudulent

14

identifying information. Thus, considering the non-accomplice evidence together as a whole while viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational factfinder could have concluded that the non-accomplice evidence tended to connect Richardson to the offense—that is, fraudulent possession of The Sun Shop list. *See Simmons*, 282 S.W.3d at 508, 511; *Brown*, 270 S.W.3d at 567. Accordingly, we overrule Richardson's first issue.

### V. Extraneous Offense Evidence

In his third issue, Richardson contends that the trial court abused its discretion by admitting the following testimony over his Texas Rules of Evidence 404(b) objection regarding his alleged participation in "dumpster diving."[2]

**Direct Examination:**

[State]: Did [Webster] or [Richardson] ever obtain numbers from outside The Sun Shop?

> [Richardson objected under Rule 404(b) and Rule 403. The trial court overruled Richardson's objections but instructed the jury to only consider the line of questioning as it pertained to Richardson's knowledge or intent.]

[State]: Ms. Wood, I believe the question that I'd asked was: Were credit card numbers ever obtained outside of The Sun Shop records?

[Wood]: Yes.

[State]: And how were those credit card numbers obtained?

---

[2] Dumpster diving was defined at trial as searching through trash cans for identifying information.

15

[Wood]: Dumpster diving. I mean, like out of gas stations, they throw their roll away, you know.

. . . .

[Wood]: The roll with the credit card number on it. Some gas stations print out the last four; some print out the whole number.

. . . .

[State]: Okay. After you-all—were you ever with them when that was going on?

[Wood]: At the gas stations?

[State]: Yes.

[Wood]: No.

[State]: After those numbers were obtained, what would happen to them?

[Wood]: We would take them back to [Webster's] house, and then [Richardson] would call and check the numbers and either write–

[State]: Let me stop you there. Call who and check the numbers?

[Wood]: It's a 1-800 number, 888 number. I don't know what it is. But you just call and you put in the number, and then you put in a dollar amount. And it will say either it's been approved or it hasn't, you know. . . .

[State]: Okay. Did you ever call and check those numbers?

[Wood]: Yes.

[State]: And you saw personally Mr. Richardson doing that also?

[Wood]: Yes.

**Cross-Examination:**

16

[Defense]: How did you—where were these dumpsters that you went through?

[Wood]: I didn't say that I went through them. But, I mean, I don't know. They're outside of gas stations.

[Defense]: Well, who went through them?

[Wood]: He [the State] asked me where else they got the cards—or the numbers, and I said out of dumpsters. I don't know.

. . . .

[Defense]: Well, who got them out of dumpsters?

[Wood]: I don't know. I mean, all I know is that they had them at his house, at Maniac's [Webster's] house, you know, and that those were numbers being used also. I don't know who got them out of the dumpsters.

. . . .

[Defense]: So you never knew if [Richardson] was going through garbage bins and dumpsters retrieving identifying information.

[Wood]: That's where they got them from. I don't know who actually went and took them out. I mean, I wasn't there. I can't say that.

. . . .

[Defense]: All right. You said that [Richardson] would call credit card and debit card numbers to verify the validity of stolen credit and debit card numbers.

[Wood]: Yes.

[Defense]: Were you there when he did that?

[Wood]: Yes.

## A. Standard of Review

A trial court's decision to admit evidence is reviewed under an abuse of discretion standard. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); *Mitchell v. State*, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996). The reviewing court may reverse the trial court's decision only if the ruling is outside the zone of reasonable disagreement. *Ford v. State*, 919 S.W.2d 107, 115 (Tex. Crim. App. 1996); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

## B. Applicable Law

Rule 404(b) embodies the established principle that a defendant is not to be tried for collateral crimes or for being a criminal generally. Tex. R. Evid. 404(b); *Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992); *Booker v. State*, 103 S.W.3d 521, 530 (Tex. App.—Fort Worth 2003, pet. ref'd). Extraneous offenses are not admissible at the guilt-innocence phase of trial to prove that a defendant acted in conformity with his character by committing the charged offense. Tex. R. Evid. 404(b); *Booker*, 103 S.W.3d at 529; *Martin v. State*, 42 S.W.3d 196, 199–200 n.2 (Tex. App.—Fort Worth 2001, pet. ref'd). Evidence of other crimes or extraneous misconduct, however, may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex. R. Evid. 404(b); *Booker*, 103 S.W.3d at 529–30. Such evidence may also be introduced to rebut a defensive theory. *Powell v. State*, 63 S.W.3d 435, 439–40 (Tex. Crim. App. 2001). By raising a defensive theory, the defendant opens the door

18

for the State to offer rebuttal testimony regarding an extraneous offense if the extraneous offense has common characteristics with the offense for which the defendant was on trial.  *See Bell v. State,* 620 S.W.2d 116, 126 (Tex. Crim. App. 1980)*; Jones v. State*, 119 S.W.3d 412, 421 (Tex. App.—Fort Worth 2003, no pet.).

## C.  Analysis

Richardson argues that Wood's testimony "was being offered to prove that [Richardson] has the propensity to commit identity theft with credit card numbers and for that purpose, the evidence is inadmissible."  In response, the State asserts that Wood's testimony "was admissible for the nonconformity purpose of rebutting [Richardson's] defensive theory."

Richardson's defensive theory at trial was that (1) he had no knowledge of the identifying information found in his car, (2) the identifying information did not belong to him, and (3) the identifying information was in his car by mistake. During his opening statement, Richardson denied possessing or using identifying information, stating that he "was helping a co-employee—fellow employee move at the time.  He made the mistake of giving Gary Webster a ride and moving these items [identifying information] out of a storage shed."  In his closing argument, Richardson argued that Officer Hill "jumped to the conclusion that everybody in th[e] car knew about these items."

> He [Officer Hill] asked Mr. Richardson were those his items I think at least on two occasions, maybe three, and Mr. Richardson denied them—that they were his each time.

19

And if Mr. Richardson knew about all these items, if he knew these items were located in the driver's seat, if he knew they were in the gray plastic box, if he knew they were in the console, if he knew the stuff was in the trunk, why in the heck would he consent to the search?

Upon comprehensive review of the record, we hold that the trial court could have reasonably concluded that Wood's testimony was not offered for character conformity purposes, but instead was offered to rebut Richardson's defensive theory that the identifying information was in his car by mistake and that he had no knowledge of the identifying information. *See Lemmons v. State*, 75 S.W.3d 513, 522–23 (Tex. App.—San Antonio 2002, pet. ref'd) (explaining that an extraneous robbery offense offered by State to show murder defendant was aggressor in the past was relevant to rebut defendant's self-defense claim). Moreover, the trial court's limiting instruction shows that the trial court admitted the testimony for noncharacter conformity purposes—that is, to determine Richardson's knowledge of, and intent to, commit the alleged offense. *See* Tex. R. Evid. 105(a) (providing for a limiting instruction when evidence is admissible for one purpose but not admissible for another). Therefore, the trial court did not abuse its discretion by admitting Wood's testimony as rebuttal evidence to Richardson's defensive theory. Accordingly, we overrule Richardson's third issue.

## VI. Grossly Disproportionate Sentence

In his fourth issue, Richardson complains that the trial court abused its discretion by imposing a grossly disproportionate sentence, which violated his

constitutional right to be free from cruel and unusual punishment. In response, the State questions whether Richardson preserved this issue for review and argues, in the alternative, that Richardson's sentence is not so grossly disproportionate to his crimes as to constitute cruel and unusual punishment.

To preserve error for appellate review, a defendant must make a timely, specific objection and obtain a ruling from the trial court. Tex. R. App. P. 33.1. This requirement applies even to errors of constitutional dimension, including those asserting that a sentence is cruel and unusual. *Solis v. State*, 945 S.W.2d 300, 301 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (cited by *Jackson v. State*, 989 S.W.2d 842, 844 n.3 (Tex. App.—Texarkana 1999, no pet.)); *see also Henderson v. State*, 962 S.W.2d 544, 558 (Tex. Crim. App. 1997). There is nothing in the record indicating that Richardson objected to the sentence. He did, however, timely file a motion for new trial, complaining that his "sentence violates his constitutional protection to be free from disproportionate sentences."

To preserve an issue by motion for new trial, a defendant must present the motion to the trial court. Tex. R. App. P. 21.6. The defendant cannot merely file the motion for new trial, but must ensure that the trial court has actual notice of the motion. *See Carranza v. State*, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998) (interpreting predecessor rule, which is identical to 21.6). Actual notice may be shown by such things as the judge's signature or notation on a proposed order or by a hearing date set on the docket. *Id.*

21

There is no presentment of the motion shown in this record.  There is no entry on the trial court's docket sheet regarding the motion for new trial, no hearing was set or held, there is no signature by the judge on the motion, and there is no indication in the record that the trial court had actual knowledge that the motion for new trial was filed.  Thus, Richardson has failed to preserve his claim regarding the alleged disproportionate sentencing for our review.  *See Thompson v. State*, 243 S.W.3d 774, 776 (Tex. App.—Fort Worth 2007, pet. ref'd) (holding appellant forfeited his complaint regarding his post-adjudication sentence because he did not object at trial or present his motion for new trial).  Accordingly, we overrule his fourth issue.

## VII.  Conclusion

Having overruled all four of Richardson's issues, we affirm the trial court's judgment.

PER CURIAM

PANEL:  MCCOY and WALKER, JJ.; and DIXON J. HOLMAN (Senior Justice, Retired, Sitting by Assignment).

PUBLISH

DELIVERED:  August 12, 2010

22