**Affirmed and Memorandum Opinion filed March 12, 2013.**



**In The**

**Fourteenth Court of Appeals**
_____

**NO. 14-11-00860-CR**
_____

**OSBORN ERNIE WILSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 209th District Court
Harris County, Texas
Trial Court Cause No. 1189748**

**MEMORANDUM  OPINION**

Appellant, Osborn Ernie Wilson, was convicted of aggravated robbery.  *See* Tex. Penal Code Ann. §§ 29.02, 29.03.  In this appeal, he contends that the trial court erred in (1) admitting evidence of an extraneous offense, and (2) overruling his motion to suppress.  We affirm.

## BACKGROUND

At approximately 6 a.m. on October 30, 2008, an unidentified man robbed Corina Torres with a knife. Later that morning, police officers discovered Torres's purse under a vehicle seat in which appellant had been sitting, along with a wallet belonging to Robert Patterson, who had been robbed two days earlier. This appeal arises out of appellant's trial for robbing Torres.

Prior to the trial, appellant moved to suppress evidence seized from the vehicle he was in when police detained him. At a hearing on the motion, two Houston police officers testified that, on the morning of the Torres robbery, they encountered appellant while patrolling a high-crime area. The officers noticed a vehicle parked in the driveway of what they described as a "crack house." Appellant sat in the driver's seat; another man was in the front passenger's seat. The officers parked their patrol car and approached the vehicle.

As an officer approached appellant's door, "the door flung open," and appellant "jumped out, yelling." At that point, the officer observed "a white female's I.D. on the [vehicle's] floorboard," along with a checkbook and what appeared to be a deposit slip. The officer also observed that both of the car's occupants were "black males." Meanwhile, the second officer asked the passenger to exit the vehicle and then observed the identification card of what "looked like a white female" as well as a purse and "several different cards" on the floor of the driver's side.

The officers testified that appellant appeared "agitated," "excited," "nervous," "shaky," "combative," and "aggressive." Appellant's head movements led one of the officers to believe that he would flee, so appellant and his companion were handcuffed and escorted to the police car. There, the officers attempted to question appellant about the purse and the female's identification card. Appellant said "something about

2

a crack head." Beyond this, neither officer recalled him explaining why he possessed a woman's purse and identification. Appellant did, however, tell the officers that the vehicle belonged to his girlfriend.

The officers collected identification from the two men. They checked for outstanding warrants; appellant's companion had three. The officers also learned to whom the vehicle was registered and, after physically inspecting the female identification card, determined that it was a driver's license and that it did not belong to appellant, his companion, or the vehicle's registered owner. The officers then searched the vehicle and, in addition to finding the purse under the driver's seat, found several other items, including a wallet, two identification cards of males, and some credit cards.

The officers took appellant to the police station where they connected two of the recovered identification cards to the Torres and Patterson robberies. Later that day, both Torres and Patterson viewed a police lineup and each identified appellant as the assailant in their respective robberies. The trial court denied appellant's motion to suppress the evidence found in the vehicle and, during the subsequent trial, the State introduced that evidence.

Appellant's defense at trial hinged in part upon the testimony of Claudel Rudd, who stated that appellant had purchased the purse and several other items from him on the morning of the Torres robbery. Appellant's counsel attempted to lay the groundwork for this defensive theory by asking one of the officers on cross-examination whether he "recall[ed] [appellant] saying that he got [the purse] from quote, 'a crackhead.'"

The State argued that, because appellant's counsel asked this question, it could introduce evidence rebutting the defensive theory that appellant "got the property

lawfully from [a] crackhead." To disprove appellant's theory, the State sought to offer evidence of the uncharged Patterson robbery. An officer then testified about retrieving a brown wallet from the car, and Patterson identified this wallet as the one appellant stole from him.

Appellant further developed this defensive theory during his case-in-chief. Appellant's counsel elicited testimony from Rudd that, on the morning of the Torres robbery, Rudd was panhandling when an unidentified black man deposited a "nice" "zip bag" in a nearby trash can. Rudd testified that he retrieved the bag, which contained "a purse, . . . a brown wallet, . . . credit cards, [and] Social Security cards." Rudd said that he was addicted to cocaine at the time and sold the purse and its contents to appellant for ten dollars. Despite Rudd's testimony, the jury convicted appellant of the Torres robbery.

## ANALYSIS

Appellant presents two issues: (1) whether the trial court abused its discretion in admitting evidence of the Patterson robbery; and (2) whether the trial court abused its discretion in overruling appellant's motion to suppress.

### I.    The trial court did not abuse its discretion in admitting evidence of the Patterson robbery.

In his first issue, appellant contends the trial court violated Rule 404 of the Texas Rules of Evidence when it admitted evidence that appellant robbed Patterson two days before the Torres robbery. "A trial judge's decision on the admissibility of evidence is reviewed under an abuse of discretion standard and will not be reversed if it is within the zone of reasonable disagreement." *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). We "must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law

applicable to the case." *Willover v. State*, 70 S.W.3d 425, 435 (Tex. Crim. App. 2002). "This principle holds true even when the trial judge gives the wrong reason for his decision, and is especially true with regard to admission of evidence." *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 2002).

### A. Evidence of other crimes may be admissible if it is relevant for other purposes apart from showing character conformity.

Rule 404(b) provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The rule does not categorically exclude evidence, but provides that certain evidence is inadmissible to prove certain facts in a certain way. *See De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). Specifically, the rule prohibits a two-part chain of inferences. The first inference is that the person who engaged in the "crime[ ], wrong[ ] or act[ ]" possesses a certain "character." Tex. R. Evid. 404(b). The second inference is that, because the person possesses this character, he or she acted in conformity with it on a particular occasion. *Id.* When evidence relies exclusively upon this inferential chain for its relevance, Rule 404 renders it inadmissible. *See Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990) (op. on reh'g).

When evidence has relevance apart from this particular chain, however, Rule 404 has little to say about it. In some cases, of course, the prohibited inferences are so compelling and the alternative relevance so tenuous that admitting the evidence creates unfair prejudice that substantially outweighs its "non-character" probative value. *See Mozon v. State*, 991 S.W.2d 841, 846 (Tex. Crim. App. 1999). When this happens, the trial court may exclude the evidence under Rule 403. *See id.* Moreover, when evidence could be considered for both an improper

5

character purpose and a legitimate non-character purpose, the trial court, upon request, should instruct the jury to limit its consideration of the evidence (as it did here). *Montgomery*, 810 S.W.2d at 388; *see also* Tex R. Evid. 105(a). This case does not implicate such concerns, however, because appellant challenges neither the jury instructions nor Rule 403's balance of prejudice and relevance.

Our inquiry thus defined, we turn to Rule 404. The question before us is whether evidence of the prior Patterson robbery had relevance apart from proving appellant's alleged character for robbery and thereby showing that appellant robbed Torres in conformity with his alleged character to do so.

Courts have recognized many alternative bases for admitting extraneous offense evidence. Generally speaking, a party may introduce such evidence where—without relying upon the prohibited inferences—it logically serves to make more probable or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact. *Montgomery*, 810 S.W.2d at 387. Thus, extraneous offense evidence may be admissible to establish a contested element of the prosecution such as motive, intent, or identity, or to rebut a defensive theory such as absence of mistake or accident. *See Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). Extraneous offense evidence may also be admissible as "same-transaction contextual evidence" to the extent necessary to the jury's understanding of the charged offense. *See Wyatt v. State,* 23 S.W.3d 18, 25 (Tex. Crim. App. 2000).

Because no exhaustive list of permissible alternative justifications exists or is possible, "[t]he proponent of uncharged misconduct evidence need not 'stuff' a given set of facts into one of the laundry-list exceptions set out in Rule 404(b)." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). Instead,

6

proponents must be able to explain the logical and legal rationales that support a non-character basis for admitting the evidence. *Id.* Extraneous offense evidence that logically serves a non-character purpose is "relevant *beyond* its tendency to prove the character of a person to show that he acted in conformity therewith," and it is therefore admissible subject to other applicable rules. *Montgomery*, 810 S.W.2d at 387 (internal quotation marks omitted).

**B.      Evidence of the Patterson robbery was relevant for the non-character purpose of rebutting appellant's defensive theory that he innocently received Torres's purse from Rudd.**

Here, the State offers three bases for admission of the Patterson robbery evidence: (1) proving identity under the so-called signature-crime exception, (2) impeaching Rudd's testimony, and (3) rebutting the defendant's explanation for possessing Torres's recently stolen property. Because we agree with the State's third proposed justification, we do not address the other two.

One well-established rationale for admitting evidence of uncharged misconduct is to rebut a defensive issue that negates one of the elements of the offense. *De La Paz*, 279 S.W.3d at 343. Merely denying the commission of an offense, however, generally does not permit admission of extraneous-offense evidence. *See id.* at 343. Rather, the question is whether the proposed extraneous-offense evidence tends to make the defensive theory less probable without relying upon prohibited character inferences. *See id.*; *Bass v. State*, 270 S.W.3d 557, 563 & n.8 (Tex. Crim. App. 2008).

Put another way, a defensive theory gives the State something new to rebut, which may expand the field of relevant issues and make otherwise-irrelevant evidence relevant. *Bass*, 270 S.W.3d at 558 n.8. For example, in *Richardson v. State*, the defendant explained incriminating materials found in his vehicle by

7

testifying that he was innocently helping a "fellow employee" move when police discovered the materials. 328 S.W.3d 61, 71 (Tex. App.—Fort Worth 2010, pet. ref'd) (per curiam). His defense was that he was unaware of the incriminating items, among which were credit card receipts. *Id.*

To rebut this theory, the State introduced evidence that the defendant participated in a "dumpster diving" scheme that involved collecting credit card receipts from garbage bins. *Id.* at 70, 71-72. The court of appeals held that admission of evidence related to this extraneous scheme was not an abuse of discretion because it tended to rebut the defendant's theory that he was unknowingly moving the receipts for a fellow employee. *Id.* at 72. While this evidence may have been inadmissible initially, the defendant's theory that he was unaware of the items made evidence of how he acquired them relevant for the non-character purpose of demonstrating his knowledge that he possessed them.

Similarly here, the Patterson robbery is an extraneous offense. Initially, evidence that appellant possessed Patterson's stolen wallet was likely not probative of whether appellant robbed Torres, apart from the prohibited character-conformity inference. But appellant offered an innocent explanation for officers finding Torres's purse on the floorboard of appellant's car within hours of the Torres robbery: he got the purse from Rudd, a "crackhead." Problematic to appellant's defensive theory is the presence of other stolen property—Patterson's brown wallet—on the floorboard of appellant's vehicle at the same time. While appellant offered evidence that he also got a brown wallet from Rudd, Patterson could not only identify the brown wallet on the floorboard as his stolen property but also link it to appellant as his assailant. In this way, evidence of the Patterson robbery became probative apart from the prohibited inference. The State could not

8

introduce Patterson's evidence to prove appellant more likely than not robbed Torres *because* he also robbed Patterson. The State could, however, introduce that evidence to show it was less likely appellant had innocently obtained Torres's purse from Rudd because at the same time and in the same place he possessed a brown wallet that he had stolen from Patterson.

Evidence rebutting appellant's innocent explanation was important to the State's case. Unexplained possession of recently stolen property permits an inference that the person possessing the property also stole it. *See Hardesty v. State*, 656 S.W.2d 73, 77 (Tex. Crim. App. 1983); *Brown v. State*, 804 S.W.2d 566, 570 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd). While not conclusive, this inference alone can suffice to sustain a conviction. *Id*. When the defendant produces evidence that he innocently acquired the property, however, the State can no longer rely exclusively upon the inference and must introduce evidence showing the defendant's explanation to be false or unreasonable. *See Prodan v. State*, 574 S.W.2d 100, 102–03 (Tex. Crim. App. 1978); *Adams v. State*, 552 S.W.2d 812, 815 (Tex. Crim. App. 1977).

Here, to prove its case, the State relied in large part upon appellant's possession of Torres's recently stolen purse.[1] Appellant's theory that he bought a bag containing the purse explained this possession and thus forced the State to shore up the inference that appellant possessed the purse because he had stolen it. As discussed above, evidence of the Patterson robbery tended to show that appellant's explanation was false. In this way, the evidence enabled the State to

___

[1] The State also relied upon Torres's identification of Rudd as the man who robbed her, which further rebutted appellant's explanation that he acquired the purse by purchase. We do not intend for our discussion of the recently-stolen-property inference to imply that the evidence against appellant would have been insufficient absent evidence of the Patterson robbery. That question is not before us, and we express no opinion upon it.

rely upon the full strength of the inference that appellant possessed Torres's recently stolen purse because he stole it.[2]  For these reasons, we conclude that the trial court did not abuse its discretion by admitting evidence of the Patterson robbery, and we overrule appellant's first issue.

## II.    The trial court did not abuse its discretion in denying appellant's motion to suppress.

In his second issue, appellant contends that the vehicle search violated the United States and Texas Constitutions.  *See* U.S. Const. amend. IV; Tex. Const. art. I, §9.  We note, at the outset, that appellant has not appealed any issues related to his detention, and we limit our analysis accordingly.

We review a ruling on a motion to suppress for abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008).   More specifically, we apply a bifurcated standard of review.  *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).  We give almost total deference to a trial court's determination of historical facts and review de novo the trial court's application of the law of search and seizure.  *Tucker v. State*, 369 S.W.3d 179, 184 (Tex. Crim. App. 2012).  When, as here, the trial court does not make findings of fact, we view the evidence in the light most favorable to the trial court's ruling.  *Id.*

A search conducted without a warrant is per se unreasonable unless it falls within one of the "specifically defined and well established" exceptions to the warrant requirement.  *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003).   "One such exception holds that the police may lawfully search an

---

[2] For other cases in which extraneous offenses have been held admissible to show unexplained possession of recently stolen property, see *Beard v. State*, 458 S.W.2d 85, 88 (Tex. Crim. App. 1970); *Ruiz v. State*, 726 S.W.2d 587, 590–91 (Tex. App.—Houston [14th Dist.] 1987), *vacated on other grounds*, 761 S.W.2d 4 (Tex. Crim. App. 1988).

automobile if they have probable cause to believe that the vehicle contains evidence of a crime. Probable cause to search exists when there is a 'fair probability' of finding inculpatory evidence at the location being searched." *Neal v. State*, 256 S.W.3d 264, 283 (Tex. Crim. App. 2008).

Here, ample facts supported probable cause. First, there was an identification card in plain view in the vehicle that depicted a female and thus did not belong to the vehicle's male occupants.[3] A purse, typically a female accessory, was also visible. When approached, appellant appeared aggressive and nervous; his movements suggested that he was considering flight. In response to inquiries about the items, appellant made reference to a "crack head." The officers also knew that appellant was parked at a so-called crack house in a high-crime area. Collectively, these observations justified the reasonable suspicion that either (1) appellant received the purse and identification card from a crack addict, as he suggested, or (2) appellant was dissembling and, in fact, had stolen the items himself. Either inference leads to a "fair probability" that the visible identification card evidenced a theft and that the vehicle might contain additional corroborating evidence. *See id.*

Viewed in the light most favorable to the trial court's ruling, this evidence shows that the officers had probable cause at the time of the search to believe that the vehicle contained evidence of a crime. Accordingly, the trial court did not

---

[3] Although appellant characterizes as "highly questionable" the officers' testimony that they observed the female identification card prior to their search of the vehicle, the trial court was entitled to believe that testimony. In the absence of specific findings, we "infer[ ] the necessary factual findings that support the trial court's ruling if the record evidence (viewed in the light most favorable to the ruling) supports these implied fact findings." *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

abuse its discretion in denying the motion to suppress, and we overrule appellant's second issue.

## CONCLUSION

Having overruled both of appellant's issues, we affirm the judgment of the trial court.


/s/    J. Brett Busby
        Justice


Panel consists of Justices Frost, McCally, and Busby.

Do Not Publish — Tex. R. App. P. 47.2(b).