**AFFIRMED; Opinion Filed November 27, 2013.**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-12-00927-CR**

**No. 05-12-00928-CR**

**STEVEN RENE ROCHA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 203rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F12-55213-P and F10-58318-P**

## MEMORANDUM OPINION

Before Justices FitzGerald, Francis, and Myers
Opinion by Justice Myers

Appellant Steven Rene Rocha appeals from an order revoking his deferred adjudication probation for theft, enhanced, and a separate conviction for possession of a controlled substance. In two issues, he argues the trial court's unwillingness to consider the full range of punishment violated his due process rights, and that there is insufficient evidence in the record to support the trial court's order that appellant pay $304 in court costs. We affirm the trial court's judgments.

## BACKGROUND AND PROCEDURAL HISTORY

Appellant was placed on three years deferred probation for theft, enhanced, in trial court cause F10–58318–P, appeal number 05–12–00928–CR, on April 21, 2011. While on probation in that case, appellant was charged by indictment with the offense of possession of a controlled substance, cocaine, in trial court cause number F12–55213–P, appeal number 05–12–00927–CR. The State moved to revoke appellant's probation in the theft case based on the new alleged

offense and allegations that appellant tested positive for cocaine on two separate occasions. On June 28, 2012, appellant entered an open plea of guilty to the possession offense and entered a plea of true to the allegations in the State's motion to adjudicate. The trial court found appellant guilty in the possession case and assessed punishment at two years' confinement in state jail. The trial court revoked appellant's probation in the theft case and assessed a two-year sentence in state jail to run concurrently.

## DISCUSSION

### *Due Process*

In his first issue, appellant argues that "[t]he trial court's unwillingness to consider the full range of punishment resulted in a deprivation of due process." More specifically, he contends the trial court's refusal to consider probation violated due process and necessitates a new trial on punishment.

Appellant did not raise this complaint at sentencing. The State argues that because appellant did not object, he failed to preserve the issue for our review. A trial court denies due process of law and due course of law when it arbitrarily refuses to consider the full range of punishment for an offense or refuses to consider the evidence and imposes a predetermined sentence. *Ex parte Brown*, 158 S.W.3d 449, 454 (Tex. Crim. App. 2005); *Teixeira v. State*, 89 S.W.3d 190, 192 (Tex. App.—Texarkana 2002, pet. ref'd). But a defendant can waive complaints of due process violations by failing to object in the trial court to its failure to consider the full range of punishment or consider certain evidence. *Eddie v. State*, 100 S.W.3d 437, 441 (Tex. App.—Texarkana 2003, pet. ref'd); *Washington v. State*, 71 S.W.3d 498, 499–500 (Tex. App.—Tyler 2002, no pet.); *Cole v. State*, 931 S.W.2d 578, 580 (Tex. App.—Dallas 1995, pet ref'd); *Leija v. State*, No. 14–04–00722–CR, 2005 WL 3199308, at *2 (Tex. App.—Houston [14th Dist.] Dec. 1, 2005, pet. ref'd) (mem. op., not designated for publication).

Although there is no indication appellant objected to the sentence, in his motion for new trial filed on July 18, 2012, appellant argued, among other things, that the sentence violated the penal code's objectives. To preserve an issue by motion for new trial, however, a defendant must present the motion to the trial court. TEX. R. APP. P. 21.6. A defendant cannot merely file the motion for new trial, but must ensure the trial court has actual notice of the motion. *See Carranza v. State*, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998); *Richardson v. State*, 328 S.W.3d 61, 72 (Tex. App.—Fort Worth 2010, pet. ref'd). Actual notice may be shown by such things as the judge's signature or notation on a proposed order or by a hearing date set on the docket. *Richardson*, 328 S.W.3d at 72. In this case, there is no presentment of the motion for new trial shown in the record, that is, no entry on the trial court's docket sheet regarding the motion for new trial, no hearing set or held, no signature by the trial court on the motion, and no indication the trial court had actual knowledge a motion for new trial had been filed. Thus, appellant failed to preserve his due process claim that the trial court was unwilling to consider the full range of punishment. *See id*. (citing *Thompson v. State*, 243 S.W.3d 774, 776 (Tex. App.—Fort Worth 2007, pet. ref'd)).

Yet even if preserved, the record does not support appellant's contention that his due process rights were violated. The trial court began the April 2011 hearing by admonishing appellant regarding the enhanced theft offense,[1] the range of punishment for that offense (two to ten years in the Texas Department of Criminal Justice),[2] and the right to a jury trial. After the trial court admonished appellant, he pleaded guilty to the theft offense and pleaded true to the

---

[1] The indictment in F10–58318-P, 05–12–00928–CR, alleged theft, enhanced, based on two prior theft convictions. *See* TEX. PENAL CODE ANN. § 31.03(e)(4)(D).

[2] *See* TEX. PENAL CODE ANN. §§ 12.35(c), 12.34(a)–(b).

enhancement paragraphs.[3]

The trial court then turned its attention to the matter of appellant's mental competency:

THE COURT: Counsel, do you believe your client is mentally competent?

[DEFENSE COUNSEL]: Yes, I do, Your Honor.

THE COURT: Mr. Rocha, you understand, sir, that your mental illness is not a curable disease?

THE DEFENDANT: Yes.

COURT: So you understand that you're going to have to live with it the rest of your life? And it should be obvious to you now that if you don't take your meds or you don't do what you're supposed to do, it looks like you always end up in jail.

DEFENDANT: I'm doing everything—

COURT: Just answer my questions. Do you understand that?

DEFENDANT: Yes.

COURT: Do you also understand, sir, that I can give you ten years in prison today?

DEFENDANT: Yes.

COURT: Are you going to make me do that if I give you another chance?

DEFENDANT: No.

COURT: You know, because here's the way I feel, I want to help—I want to help you, I want to help you with your—encouraging you to do what you're supposed to do. But, you know, it comes a time, especially when you know you suffer from a mental illess [sic] and you know that you're supposed to take your meds, that when you get to a point where you just refuse to do that and you end up back in jail because you don't do it, you give me no other choice. I will not continue to give you chances. Do you understand that, sir?

DEFENDANT: Yes, Your Honor.

THE COURT: Okay. Why did you go steal? Do you even have a reason or do you even know why?

---

[3] The record shows appellant pleaded true to the two enhancement paragraphs in the indictment, but there is no indication the trial court actually found the enhancement paragraphs to be true. The judgment states "N/A" regarding pleas and findings on the enhancement paragraphs.

THE DEFENDANT: I'm trying to remember.

THE COURT: Were you on your meds at the time?

THE DEFENDANT: I was on the meds and I was just angry and all that. I got more pills and they help me out real good and I do everything right now.

The trial court then stated:

Okay. Just remember, when you get angry or you get lonely or you get sad or anything like that, don't go out and violate the law, because when you do that, you're hurting yourself too or you wouldn't be in here. You've got to learn to divert those feelings to something else. Go out and walk a mile, go find some bricks and throw them in the creek or do something that's not against the law. But I don't want to have to send you to the penitentiary, but if you come in here violating this again, you know, there is a real likely chance I will do that, okay?

I'm going to accept your pleas, find that you are mentally competent to enter those pleas. I find your pleas were freely and voluntarily made. I will follow— there is no plea bargain agreement. I'm going to assess your punishment at three years deferred probation on this new case. And no fines, no court costs.

On June 28, 2012, the trial court conducted a hearing regarding the State's motion to adjudicate in cause F10–58318–P, appeal number 05–12–00928–CR, and the possession offense in cause F12–55213–P, appeal number 05–12–00927–CR. Shortly after the start of the hearing, the trial court told appellant he could be placed on probation or be sentenced from 180 days to two years in state jail, along with an optional $10,000 fine, for the possession offense. Appellant acknowledged he understood the sentencing range. Appellant pleaded true to the allegations in the State's motion to adjudicate and entered a guilty plea to the new offense.

Appellant testified that he had two positive urinalysis drug results because "I got involved in drugs." He testified that he had been diagnosed with a mental illness and was being treated at "Adapt." He admitted to being on medication for his mental illness at the time he committed the possession offense. Referring to appellant's drug use, defense counsel asked:

Q. Okay. With regard to your substance abuse issue, can you explain to the Judge why you're using drugs?

A. I don't know. I have no questions for that.

–5–

Q. Does it help your mental illness in some way?

A. Sometimes. I think so.

Q. In what—

A. I—I don't—I don't know.

Q. Do you hear voices?

A. Yes.

Q. When you use these drugs, does it stop the voices in your head?

A. I used to get real bad depression. Sometimes it helps slow me down.

Q. But you understand that the drugs affect the chemicals in your brain as well, you understand that?

A. I guess so.

Appellant also testified that he attended "AA" and "NA" meetings twice per week, and that he lived with his seventy-four year old mother, who needed his assistance. He requested that he attend outpatient treatment so that he could assist his mother. He testified that if he were placed on a "special needs" caseload where he could be counseled for mental illness, it would help him to successfully complete the terms of his probation. Appellant added: "I just want to do good. I'm not a violent person or nothing. And I just want to straighten my life. And I was going to church and I just want to go back to church Wednesday and Sunday, like I've been doing."

Shortly after the State began cross-examining appellant, the trial court interrupted the examination to ask appellant whether he thought he had a drug problem, to which appellant responded, "Yes." The prosecutor then cross-examined appellant as follows:

Q. Okay. And you've been doing the meetings and counseling, right?

A. Yes.

Q. For that drug problem?

A. Yes.

Q. But you're still using, aren't you?

A. Yes.

Q. Okay. So obviously that's not working, right?

A. I guess not.

Q. Okay. You want to be drug free, don't you?

A. Yes.

Q. Okay. So you are willing to do whatever the Court decides to get drug free?

A. Yes.

Q. Because obviously what you've been doing isn't working, right?

A. Yes.

Q. Okay. And is that the most important thing to you?

A. It's over?

Q. Uh-huh.

A. Yes.

Q. Okay. So you're willing to do whatever, you're not going to argue with it?

A. No.

Just before sentencing appellant, the trial court stated:

Sir, you stand before me with a sad story and a sad face, but you don't fool me, okay? You're very manipulative. You're smart enough to dilute your UA when you go to be tested. You have consistently been missing your Adapt appointments. You know that you're bipolar, you know you're supposed to go to, Adapt, you just choose not to go. You know you're not supposed to do drugs.

On this first possession case, I cut all your money, did everything I could for you. You seem to continuously go out with these women that you meet, and according to you, you just buy them crack cocaine and don't use it, which I don't believe. You're just out there just having a ball with that crack cocaine, is what I think, knowing that you're not supposed to do it and knowing that you need the help and knowing that you have the problem.

You even disclosed to probation yourself that your mother, who you say you're helping, hides her car keys from you hoping you will not get her car. You told probation that you do drugs because you got mad once and it made you happy.

You have been diagnosed with anti-social personality disorder, and just so you'll know, sir, there is not a cure for that and it's just a matter of you changing your ways. And that means that, you know, you think the world revolves around you and you can do what you want to when you get ready to do it. And I'm tired of trying to help somebody who won't help themselves.

The trial court accepted appellant's pleas and sentenced him to concurrent terms of two years' confinement in state jail.

"Due process requires a neutral and detached hearing body or officer." *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App .2006). "[A] trial court's arbitrary refusal to consider the entire range of punishment in a particular case violates due process." *Brown*, 158 S.W.3d at 456; *see also Brumit*, 206 S.W.3d at 645. But "[a]bsent a clear showing of bias, a trial court's actions will be presumed to have been correct." *Brumit*, 206 S.W.3d at 645. Bias is not shown when (1) the trial court hears extensive evidence before assessing punishment, (2) the record contains explicit evidence that the trial court considered the full range of punishment, and (3) the trial court made no comments indicating consideration of less than the full range of punishment. *See id.*; *see also Brown*, 158 S.W.3d at 456.

In this case, appellant argues the trial court's remarks during the April 2011 and June 2012 hearings, such as the court's statements that it would not continue to give appellant chances and that it was "tired of trying to help someone who won't help themselves," "indicate a clear bias." Appellant contends this bias resulted from a failure by the trial court to consider probation and necessary drug treatment as punishment. But viewed in context, the trial court's comments do not show bias or indicate that the court predetermined anything. As the Texas Court of Criminal Appeals stated:

A trial judge may certainly impress upon a prospective probationer the seriousness of the possible consequences of a failure to abide by the terms and conditions of probation, but it is an altogether different thing to promise to impose the maximum punishment if a prospective probationer fails to abide by the terms of probation and then carrying through on that promise without "actually *consider*[ing] the evidence presented at the revocation hearing."

*Brown*, 158 S.W.3d at 456–57 (quoting *Gonzales v. Johnson*, 994 F.Supp. 759, 764 (N.D. Tex. 1997)) (emphasis in original) (footnote omitted). The record in this case shows the trial court expressed sympathy for appellant and stressed alternative forms of behavior. Furthermore, by the time appellant appeared before the court on June 28, 2012, a little over a year-and-two-months after he had been placed on deferred probation, appellant had committed yet another offense—possession of a controlled substance. Appellant testified at the hearing that he was then using drugs and that the possession offense occurred while he was on medication for his mental illness. Additionally, appellant tested positive for cocaine on two separate occasions. It was towards the end of the hearing, after listening to appellant's testimony, as it was considering the extensive evidence against appellant, that the trial court commented it was tired of helping those who would not help themselves. None of the trial court's statements during either proceeding reveal any bias or partiality, nor is there any indication the court failed to consider the entire punishment range. Accordingly, we conclude appellant's due process rights were not violated. We overrule appellant's first issue.

### *Court Costs*

In his second issue, appellant argues the evidence is insufficient to support the trial court's order in cause F12-55213-P, appeal number 05-12-00927-CR, for him to pay $304 in court costs. He requests we reform the trial court's judgment to delete the requirement that he pay court costs because the clerk's record filed in this case does not contain a bill of costs.

The Texas Code of Criminal Procedure provides in part that if a criminal action is appealed, "an officer of the court shall certify and sign a bill of costs stating the costs that have accrued and send the bill of costs to the court to which the action or proceeding is transferred or appealed." TEX. CODE CRIM. PROC. ANN. art. 103.006. The code of criminal procedure further provides that "[a] cost is not payable by the person charged with the cost until a written bill is

–9–

produced or is ready to be produced, containing the items of cost, signed by the officer who charged the cost or the officer who is entitled to receive payment for the cost." *Id*. art. 103.001.

The clerk's record in this case did not contain a copy of the bill of costs or any other document with an itemized list of costs assessed in this case, and appellant's designation of the record on appeal did not request that a copy of the bill of costs be included in the record. Given that appellant raised issues concerning the costs assessed against him, we ordered the Dallas County District Clerk to prepare and file a supplemental clerk's record containing a detailed itemization of the costs assessed in this case, including specific court costs, fees, and court-appointed attorney's fees, and that the supplemental record should include documents explaining any and all abbreviations used to designate a particular fee, cost, or court-appointed attorney's fee. *See* TEX. R. APP. P. 34.5(c)(1) (rules of appellate procedure allow supplementation of clerk's record if relevant item has been omitted).

The District Clerk has complied with our order by filing a signed and certified supplemental clerk's record containing an itemization of the costs assessed in this case, and an explanation of the abbreviations used in the itemization. Because the record now contains a cost bill that supports the costs assessed in the judgment, appellant's argument that the evidence is insufficient to support the imposition of costs because the clerk's record does not contain a bill of costs is, therefore, moot. *See Coronel v. State*, No. 05–12–00493–CR, 2013 WL 3874446, at *4 (Tex. App.—Dallas July 29, 2013, pet. filed) (citing *Franklin v. State*, 402 S.W.3d 894 (Tex. App.—Dallas 2013, no pet.)); *see also Barrera v. State*, No. 05–12–00715–CR, 2013 WL 5314715, at *4 (Tex. App.—Dallas Sept. 20, 2013, no pet.) (mem. op., not designated for publication); *Juarez v. State*, No. 05–12–00125–CR, 2013 WL 3957008, at *9 (Tex. App.— Dallas July 31, 2013, no pet.) (not designated for publication).

In response to the supplemental clerk's record, appellant filed objections in which he

argues the bill of costs in the supplemental record is not a proper bill of costs. He contends the bill of costs is not a proper cost bill because it consists of "unsigned, unsworn computer printouts" that were not "signed by the officer who charged the cost or by the officer who is entitled to receive payment for the cost." As we acknowledged earlier, the code of criminal procedure requires that a bill of cost be certified and signed "by the officer who charged the costs or the officer who is entitled to receive payment for the cost," "stating the costs that have accrued" if the cause is appealed. *See* TEX. CODE CRIM. PROC. ANN. art. 103.001, .006. In this case, the District Clerk has provided a bill of costs that itemizes the costs that have accrued thus far in appellant's case, and it is certified and signed by the District Clerk. This satisfies the mandate of the code of criminal procedure. *See Coronel*, 2013 WL 3874446, at *4 (rejecting argument that bill of costs in supplemental clerk's record was not a "proper bill of costs" because it was an "unsigned, unsworn computer printout"); *see also Juarez*, 2013 WL 3957008, at *10.

Appellant also contends there is no indication the bill of costs existed at the time the judgment was entered, that it was filed in the trial court, or that it was brought to the court's attention before the costs were entered in the judgment. We rejected these arguments in *Coronel*, where we stated that "nothing in the code of criminal procedure or the statutes addressing the assessment of costs against defendants requires that a bill of costs be presented to the trial court at any time before judgment." *See Coronel*, 2013 WL 3874446, at *5; *see also Juarez*, 2013 WL 3957008. We therefore deny appellant's objections and overrule his second issue.[4]

---

[4] In his original brief and his objections, appellant does not challenge the propriety or legality of the specific costs assessed; therefore, we do not address those matters.

We affirm the trial court's judgments.


                                              /Lana Myers/
                                              LANA MYERS
                                              JUSTICE


Do Not Publish
TEX. R. APP. P. 47
120927F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STEVEN RENE ROCHA, Appellant

No. 05-12-00927-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 203rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F12-55213-P.
Opinion delivered by Justice Myers.
Justices FitzGerald and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 27th day of November, 2013.

/Lana Myers/
LANA MYERS
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

**JUDGMENT**

STEVEN RENE ROCHA, Appellant

No. 05-12-00928-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 203rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F10-58318-P.
Opinion delivered by Justice Myers.
Justices FitzGerald and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 27th day of November, 2013.

/Lana Myers/
LANA MYERS
JUSTICE