**Agrence Delance SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–01–00070–CR.**

Court of Appeals of Texas, Texarkana.

Submitted May 8, 2002.

Decided June 25, 2002.

Catherine M. Shelton, Attorney at Law, Dallas, for Appellant.

Tim Cone, Upshur County District Attorney, Gilmer, for The State.

Before GRANT, ROSS, and CORNELIUS,* JJ.

## OPINION

Opinion by Justice ROSS.

Agrence Delance Smith appeals his conviction for aggravated perjury. After a bench trial, the court found Smith guilty of the third degree felony offense of aggravated perjury, and finding both enhancement paragraphs of the indictment true, assessed punishment at twenty-five years' imprisonment. Smith appeals, alleging three points of error. He contends: 1) the State was estopped from prosecuting him for aggravated perjury; 2) the evidence is factually insufficient to support the conviction; and 3) he received ineffective assistance of counsel.

Smith was convicted of aggravated perjury, an offense stemming from his trial on June 17, 1999, for misdemeanor theft and a plea agreement entered incident to the disposition of that case. Smith perjured himself when he signed a sworn application for probation in that case, stating he had never before been convicted of a felo-

* William J. Cornelius, C.J., Retired, Sitting by Assignment.

ny offense. After the trial court accepted Smith's plea of guilty to the theft accusation and assessed his punishment at one year of deferred adjudication community supervision, the State discovered Smith had ten previous felony convictions. The State also learned Smith had been confined in prison on at least two prior occasions under the name "Agrence Delance Johnson, aka Tracy Johnson."

In his first point of error, Smith contends the State is estopped from prosecuting him for aggravated perjury. Smith contends because the untruthful statement occurred in the plea agreement in the theft case, and because the State received a substantial benefit from that agreement, the State was limited in its remedies to denying deferred adjudication or seeking revocation of his community supervision. Smith also contends public policy should prevent the prosecutor from assisting defendants, and because the prosecutor in effect served as Smith's attorney in the theft case, the State should be estopped from bringing the aggravated perjury case.

The plea agreement in the theft case was signed June 17, 1999. Smith was represented by counsel in that case through mid-May 1999. It was Smith's counsel who communicated with the assistant district attorney and negotiated the plea agreement. Smith's counsel was permitted to withdraw from the case, and Smith acted pro se at his trial on June 17. The evidence shows that all communications the assistant district attorney had directly with Smith were on June 17, and according to ·the assistant district attorney's testimony, she explained the application for probation to Smith on that day. She testified specifically as follows:

> Every time we do a plea I bring paperwork to the courtroom and present it to pro se defendants and explain to them what the papers say, where they're expected to sign, and what decisions they have to make.
>
> . . . .
>
> When I hand the stack of paperwork to a defendant, [the application for probation] is always the top document in the stack, and my standard explanation which I gave something very similar to it, I can't recite word for word what I said, but I hand the documents to each defendant and sometimes there's more than one seated at the table and I'll say the top document is an application for probation, if you are asking the judge to give you probation instead of jail time and if you have never been convicted of a felony anywhere in the United States, then you need to sign this document where it says defendant, notice that there are two places that you will need to sign, the first signature Line is your statement that you want probation and that you have never been convicted of a felony, the second signature Line is . . . an oath and you are swearing under oath that what you said at the top of the page is the truth.
>
> . . . .
>
> I always tell [pro se defendants] that if they have been convicted of a felony, it does not mean they cannot be given probation. It simply means that they must mark out the word "never" before they sign their name. And that's also part of my standard statement that I make to a pro se defendant before we do the pleas. If Mr. Smith had in fact marked out the word never, I would have changed his papers and recommended a straight probation instead of deferred.

■■■ Smith is correct that public policy generally prevents the prosecutor from assisting a defendant at trial. Under our adversarial system, it is inappropriate in a

criminal case for anyone other than the defendant's own counsel to give legal advice to the defendant. Smith waived his right to counsel and did not contest guilt at the trial of the underlying misdemeanor offense. Because he did not contest his guilt, the trial court therefore was only required to determine whether his waiver of the right to counsel was knowing, intelligent, and voluntary, but was not required to admonish him of the dangers and disadvantages of self-representation pursuant to *Faretta*.[1] *Hatten v. State,* 71 S.W.3d 332, 334 (Tex.Crim.App.2002). Nonetheless, it is inconsistent with our adversarial system for the prosecuting attorney to explain to defendants what legal documents "say," or "what decisions [the defendants] have to make," or what words they should or should not "mark out" in a legal document, or even whether they are required to sign, or should sign, a particular document. These are all matters on which the accused should have the advice of his or her own independent counsel, unless such person has made a knowing, intelligent, and voluntary waiver of the right to counsel, with full knowledge of the dangers and disadvantages of self-representation. If an accused has made such waiver, with such knowledge, then he or she should be held to the same standards as a licensed attorney and, unless standby counsel has been appointed, left alone to deal with these matters.

This case is a good example of where mere determination of whether the accused voluntarily and intelligently waived the right to counsel, without a corresponding admonishment on the dangers and disadvantages of self-representation, should not qualify as satisfying the right to counsel guarantees of the United States and Texas Constitutions. Since a defendant who has waived the right to counsel is necessarily relegated to self-representation, a determination of the voluntariness and intelligence of the waiver should not—and perhaps cannot—be made without some determination of the defendant's knowledge of the dangers and disadvantages of self-representation. We urge the Texas Court of Criminal Appeals to reexamine its holding in *Hatten.*

Smith does not make adequacy of the trial court's admonishment in the theft prosecution a part of his estoppel argument, and his own testimony at the trial of the instant case clearly shows he did not, in signing the application for probation, rely on any actions by the assistant district attorney. Rather, Smith contends that, even though he made an untrue statement in the application for probation, the State is limited to the remedies provided in the application: either denying probation or revoking his probation based on his untruthful statements. He contends jeopardy has attached, and the State cannot get the benefit of its bargain, and then more.

■■■ A plea agreement is a contractual arrangement. *Ortiz v. State,* 933 S.W.2d 102, 104 (Tex.Crim.App.1996). We apply general contract law principles to determine the content of a plea agreement in a criminal case. *Ex parte Moussazadeh,* 64 S.W.3d 404, 411 (Tex.Crim.App. 2001). Generally, courts look only to the written contract to discern the contracting parties' obligations. *See Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 727–28 (Tex. 1981); *Danciger Oil & Ref. Co. v. Powell,* 137 Tex. 484, 154 S.W.2d 632, 635 (1941).

The exact language in the application for probation is:

BEFORE ME, the undersigned authority, on this day personally appeared, the Defendant, in the above styled and

---

1. *Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

numbered cause, who being by me duly sworn, deposes and says on his/ Oath that every averment in the foregoing petition and Application for Probation is true and correct, and that he understands and acknowledges that any untrue statement in said Application may be grounds for denial or revocation of any probation in said cause.

The language in the application is not limiting language. It does not restrict the state from pursuing violations of the law resulting from the agreement. This is not a case of double jeopardy, as Smith contends. The State is not trying him again or taking actions against him for his misdemeanor theft; rather, Smith was charged with a completely separate violation of the law that did not occur until he signed and swore to the truth of the application for probation. There is no language in the application for probation preventing the State from pursuing violations of the law that occur as a result of the plea agreement. Smith's first point of error is overruled.

▮▮▮ In his second point of error, Smith challenges the factual sufficiency of the evidence. A factual sufficiency review dictates that the evidence be viewed in a neutral light, favoring neither party. *Johnson v. State*, 23 S.W.3d 1, 6–7 (Tex. Crim.App.2000); *see Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). We set aside the verdict for factual insufficiency if 1) the evidence in support of a vital fact, considered as standing alone, is factually too weak to support it, or 2) looking at all the evidence, some evidence supports a positive inference and some supports a negative inference, but the state's evidence is so weak as to make the finding against the great weight and preponderance of the available evidence. *Goodman v. State*, 66 S.W.3d 283, 285–86 (Tex.Crim.App.2001).

▮▮▮ A person commits perjury if, with the intent to deceive and with knowledge of the statement's meaning: that person makes a false statement under oath or swears to the truth of a false statement previously made and the statement is required or authorized by law to be made under oath. TEX. PEN.CODE ANN. § 37.02 (Vernon 1994). A person commits aggravated perjury if the person makes a material false statement during or in connection with an official proceeding. TEX. PEN.CODE ANN. § 37.03 (Vernon 1994). A judicial proceeding is an official proceeding. TEX. PEN.CODE ANN. § 1.07(a)(33) (Vernon 1994). Smith clearly made a material false statement under oath during or in connection with an official proceeding. He contends, however, the evidence is factually insufficient to prove he had the requisite intent to deceive.

As pointed out above, the assistant district attorney testified she explained to Smith the documents he signed at his theft trial. She further testified that, in making her recommendation for deferred adjudication, she relied on Smith's statement in the application that he had no prior felony convictions and that, had she known of these convictions, her recommendation would have been different. Smith disputed that the assistant district attorney explained the documents to him and testified he did not talk with her at all about the documents. He testified it was another person, whom he assumed was the court reporter, who gave him the papers and hurried him along because that person said the judge was waiting for him. Smith testified that he had an eleventh-grade education, that he had received a high school GED diploma, and that he could read and understand the application for probation.

▮▮▮ In conducting a factual sufficiency review, "an appellate court reviews the factfinder's weighing of the evidence and is authorized to disagree with the factfinder's determination." *Clewis*, 922

S.W.2d at 133. This review, however, must employ appropriate deference to prevent an appellate court from substituting its judgment for that of the fact-finder, and any evaluation should not substantially intrude on the fact-finder's role as the sole judge of the weight and credibility given to any witness' testimony. *Jones v. State*, 944 S.W.2d 642, 648 (Tex.Crim.App.1996). It is the province of the fact-finder to determine the weight and credibility of each witness' testimony. Smith testified he could read and write the English language and understood the document. The State provided sufficient evidence to prove its case. We hold the evidence was factually sufficient to support the verdict and overrule Smith's second point of error.

In Smith's final point of error, he contends his trial counsel rendered ineffective assistance of counsel by failing to subpoena the court reporter from the theft case when it became evident the court reporter was a material witness. Smith contends trial counsel's failure harmed him because her testimony would have decided the outcome of the case.

 Smith testified a slender woman with reddish brown hair, whom he assumed was the court reporter, handed him the plea agreement documents. Callie Johnson, Smith's mother, testified a slim lady "with kind of brunette hair" spoke with Smith. Neither Smith nor Johnson were able to identify this person by name; they only gave physical descriptions. There is no evidence of whether Smith's trial counsel had already investigated who this woman was or whether he had already spoken with her and determined what relevant information she may have had.

 It is the defendant's burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim. App.1999). To prevail on a claim of ineffective assistance of counsel, the appellant must show both 1) that counsel's performance was so deficient it was outside the range of reasonable professional judgment, and 2) that the appellant was prejudiced by this performance and there is a reasonable probability, one sufficient to undermine confidence in the outcome of the trial, that the result of the trial would have been different. *Id.* at 812. An appellant must demonstrate trial counsel's ineffectiveness in light of the totality of the circumstances. *Id.* at 813. The appellant must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.* The fact another attorney may have pursued a different strategy does not necessarily indicate ineffective assistance of counsel. *See Hawkins v. State*, 660 S.W.2d 65, 75 (Tex.Crim.App.1983). When facing a silent record as to defense counsel's strategy, the court will not speculate as to defense counsel's tactics or guess what the reasons might be for taking or not taking certain actions. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). Without evidence of the strategy and methods involved concerning counsel's actions at trial, the court will presume sound trial strategy. *See Thompson*, 9 S.W.3d at 814.

Although the court reporter at the underlying prosecution may have been a material witness, there is no evidence as to what her testimony would have been. Counsel may have already spoken with her and determined her testimony would have been more damaging than helpful. Absent evidence of the trial strategy, we will not speculate as to counsel's tactics or guess what the reasons may have been for not calling the court reporter to testify. We overrule Smith's final point of error.

We affirm the judgment.