

# NUMBER 13-12-00221-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

SUSAN KATHARINE STEWART,                                    Appellant,

**v.**

THE STATE OF TEXAS,                                            Appellee.

### On appeal from the 377th District Court
### of Victoria County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez, and Justices Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant Susan Katharine Stewart appeals her conviction of three counts of injury

to a child, first-degree felonies, *see* TEX. PENAL CODE ANN. § 22.04(a)(2), (e) (West 2011),

and three counts of aggravated sexual assault of a child, also first-degree felonies, *see id.*

§ 22.021(a)(1)(B)(ii), (2)(B).[1]  The jury found appellant guilty of each count and assessed punishment at six life imprisonments in the Texas Department of Criminal Justice, Institutional Division.  The sentences are to run concurrently.  By four issues, which we reorganize as two, appellant complains (1) trial counsel rendered ineffective assistance; and (2) her sentence is cruel and unusual punishment.  We affirm.

## I.  BACKGROUND[2]

Appellant's convictions involve the injury and sexual assault of her son, T.S.[3]  The State presented evidence showing appellant repeatedly delivered T.S. to a known sex offender, Gerald Graves, with whom appellant resided with for a short period and relied upon for financial support.  Karen Smithey, a child protective services (CPS) caseworker, testified that when T.S. was four years old, he complained that Graves "pinched on his penis" and poked "down there with a stick."  CPS created a safety plan whereby appellant agreed not to allow Graves access to T.S.  Appellant, however, ignored the safety plan and continued to take T.S. to Graves's house for unsupervised visits.  She further ignored T.S.'s repeated outcries that Graves was sexually assaulting

---

[1] Appellant was convicted of three counts of injury to a child, premised on appellant's allowing Gerald Graves continued unsupervised access to T.S., and failing to make a report to law enforcement, after T.S. complained of being sexually assaulted by Graves.  Appellant was convicted of three counts of aggravated sexual assault for "acting alone or as a party" to T.S.'s sexual assault on three separate occasions.  Graves was separately tried and convicted on three counts of aggravated sexual assault.  He received a life sentence for his crimes.  *See generally Graves v. State*, Nos. 13-11-00617-CR & 13-11-00618-CR (Tex. App.—Corpus Christi June 27, 2013, no pet. h.) (mem. op.), *available at* http://www.13thcoa.courts.state.tx.us/opinions/pdfOpinion.asp?OpinionID=21060.

[2] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it.  *See* TEX. R. APP. P. 47.4.

[3] We refer to the child sexual assault victim by his initials to protect his identity.

him.  In 2005, when T.S. was eight years old, CPS took custody of T.S.  In 2007, appellant's parental rights to T.S. were terminated.

In 2010, T.S. made an outcry to Brenda Whitefield, his foster mother, detailing how Graves would "put his penis in my bottom . . . ."  T.S. next told his counselor, Catherine Parsons-Key, how Graves anally penetrated him, and how Graves pressured T.S. into performing oral sex on him.  At trial, T.S. testified he told appellant about the sexual assaults, but that she "[j]ust gave me medication[]" for the injuries inflicted by the anal penetration.  Appellant did not stop taking T.S. to Graves's house.

T.S. testified that appellant took him to Graves's house almost every Saturday. Whitefield recalled that T.S. told her, "I would go over there [to Graves's house] on Saturday and then in the afternoon, I would go home or the next day I would go home, and my mom would put medicine in my bottom."  Parsons-Key affirmed that, based on her conversation with T.S., she believed that appellant treated T.S. with suppositories on a regular basis.  Smithey testified that, based on reports in the CPS case file, appellant forbade T.S. from telling anyone that he had seen Graves or anything about Graves's penis.  Smithey further stated that CPS was informed that appellant asked various individuals to lie for her, and to say that T.S. stayed with them, rather than Graves, over the weekends.

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

By her first issue, appellant complains that trial counsel provided constitutionally ineffective assistance.  *See* U.S. CONST. amend VI.  Appellant contends trial counsel was constitutionally deficient because she failed to:  (1) have an expert witness testify

3

regarding appellant's limited intellectual and social abilities; (2) discuss Graves's criminal case and the termination of appellant's parental rights during voir dire; and (3) obtain a ruling on the date of T.S.'s outcry. No motion for new trial or any other post-judgment motion asserting ineffective assistance of counsel was filed or otherwise considered by the trial court.

## A.     Standard of Review

To prevail on an ineffective assistance of counsel claim, appellant must show (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet.). Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if appellant rebuts the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142; *Jaynes*, 216 S.W.3d at 851. The record must contain evidence of counsel's reasoning, or lack thereof, to rebut the presumption. *Moreno v. State*, 1 S.W.3d 846, 865 (Tex. App.—Corpus Christi 1999, pet. ref'd). To overcome the presumption, counsel's conduct or action needs to be "so outrageous that no competent attorney would have engaged in it." *Mata v. State*, 226, S.W.3d 525, 430 (Tex. Crim. App. 2007). We review the totality of representation rather than isolated instances in determining whether trial counsel was ineffective. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Lopez*, 343 S.W.3d at 143.

**B.     Calling Witnesses**

By her first sub-issue, appellant argues trial counsel was ineffective for failing to call an expert witness to testify regarding appellant's intellectual and social capabilities with respect to the offenses charged against her.[4]  Appellant, however, offered no evidence regarding why her trial counsel did not call an expert witness or otherwise show why it would be objectively unreasonable not to call such a witness.

"The decision [of] whether to present witnesses is largely a matter of trial strategy." *Shanklin v. State*, 190 S.W.3d 154, 164 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd) (citing *Rodd v. State*, 886 S.W.2d 381, 384 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd)); *Smith v. State*, 84 S.W.3d 36, 42 (Tex. App.—Texarkana 2002, no pet.). Appellant does not give sufficient record evidence to rebut the presumption that her counsel's actions were based on sound trial strategy.  *See Ex parte Flores*, 387 S.W.3d 626, 633 (Tex. Crim. App. 2012).  Neither does appellant show that that there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different.  *See Lopez*, 343 S.W.3d at 142; *Moreno*, 1 S.W.3d at 864. We overrule appellant's first subissue.

**C.     Voir Dire**

By her second sub-issue, appellant argues about trial counsel's performance during voir dire.  Appellant asserts that "a well phrased set of questions could have isolated any people who recalled the Graves case" and that "asking the jury panel about the issue of termination of parental rights would have isolated any people who might have

---

[4] As support, appellant identifies a psychological evaluation that was admitted as a "defense exhibit" during the trial and related trial testimony, showing that she generally suffers from personality and depression disorders.

5

been sensitive to child rearing issues and therefore be prejudiced against Appellant because her parental rights had been terminated."[5]

Assuming without deciding that counsel's omission of these topics was deficient, appellant does not present any evidence showing that any potential jurors recalled the Graves case. Appellant further fails to identify any juror who was prejudiced against her, either because of her association with Graves or the child termination issues. Accordingly, because appellant has not shown that the trial's outcome would have been different had her trial counsel discussed these two subjects during voir dire, we overrule appellant's second subissue. *See Lopez*, 343 S.W.3d at 142; *Moreno*, 1 S.W.3d at 864.

## D. Outcry Date

By her third sub-issue, appellant argues trial counsel was ineffective because she did not obtain the trial court's ruling "regarding the precise date" of the child's outcry.

Appellant's briefing focuses on trial counsel's objections regarding to whom T.S. first made his outcry. *See* TEX. CRIM. PROC. CODE ANN. art. 38.072 § 2(a)(3) (West Supp. 2011) (requiring outcry witness to have been the first person eighteen years or older to whom the victim made an outcry). Appellant's counsel objected to the admission of Whitefield's outcry testimony, arguing that T.S. made an outcry to Parsons-Key before Whitefield. The State, however, asserted that T.S. made his outcry to Whitefield. The trial court held that Whitefield's outcry testimony could go to the jury, and gave appellant a

---

[5] Appellant attached the text of a radio commercial to her brief and referred the court to evidence in another criminal appeal to support her argument. Inasmuch as they are not part of the record on appeal, we are not permitted to consider them. *See Ramirez v. State*, 104 S.W.3d 549, 551 n. 9 (Tex. Crim. App. 2003) (en banc) (citing *Farris v. State*, 712 S.W.2d 512, 515–16 (Tex. Crim. App. 1986)); *Hartman v. State*, 198 S.W.3d 829, 842–43 (Tex. App.—Corpus Christi 2006, pet. struck); *Witkovsky v. State*, 320 S.W.3d 425, 428 (Tex. App.—Fort Worth 2010, pet. dism'd).

running objection to Whitefield's testimony. The trial court noted, "[W]e can take up your other objections as those witnesses come up to testify."

The State subsequently called Parsons-Key to testify. Before she testified, the trial court, outside the presence of the jury, asked the State to clarify how her testimony would differ from Whitefield's. The State explained that Parsons-Key was testifying as a professional counselor, not as an outcry witness.[6] The record shows that Parsons-Key began counseling T.S. in "either the latter part of 2007 or early part of 2008," but that T.S. did not discuss his sexual abuse with Parsons-Key until *after* he made an outcry to Whitefield in March 2010.

Appellant has failed to prove by a preponderance of the evidence that trial counsel's performance fell below "an objective standard of reasonableness under the prevailing professional norms." *Lopez*, 343 S.W.3d at 142. Parsons-Key's testimony and "progress note," which the trial court admitted, indicates that T.S. made an outcry to Whitefield before he discussed it with Parsons-Key. Accordingly, it was entirely reasonable for appellant's attorney to not further challenge the admissibility of Whitefield's testimony on the grounds that T.S. first made an outcry to Parsons-Key before Whitefield, especially after the State emphasized Parsons-Key's status as a counselor rather than an outcry witness. Moreover, appellant has failed to explain how the trial's outcome would have been different had the trial court made a ruling regarding the date that T.S. made his outcry. Appellant does not show how this information would

---

[6] "Texas appellate courts have allowed licensed professional counselors and psychotherapists to testify under Texas Rule of Evidence 803(4)." *Taylor v. State*, 263 S.W.3d 304, 311 (Tex. App.—Houston [1st Dist.] 2007), *aff'd*, 268 S.W.3d 571 (Tex. Crim. App. 2008); *see Wilder v. State*, 111 S.W.3d 249, 256 (Tex. App.—Texarkana 2003, pet. ref'd) (allowing testimony from licensed professional counselor under rule 803(4)).

have precluded or undermined Whitefield's or Parsons-Key's testimony or otherwise lead to a different result. *See Lopez*, 343 S.W.3d at 142; *Moreno*, 1 S.W.3d at 864. We overrule appellant's third subissue.

### III. CRUEL AND UNUSUAL PUNISHMENT

By her second issue, appellant argues that six concurrent life sentences constitute cruel and unusual punishment. *See* U.S. CONST. amend VIII; TEX. CONST. art. 1, § 13. Appellant did not object to the sentences at trial. Appellant, however, did make this argument in her motion for new trial, which was filed on the same day as her notice of appeal. The record, however, does not contain the trial court's ruling on the motion, and no hearing was held thereon.

To preserve an error for appellate review, an appellant must make a timely, specific request, objection, or motion and obtain a ruling from the trial court. TEX. R. APP. P. 33.1. "This requirement applies even to errors of constitutional dimension, including those asserting that a sentence is cruel and unusual." *Richardson v. State*, 328 S.W.3d 61, 72 (Tex. App.—Fort Worth 2010, pet. ref'd) (citing *Henderson v. State*, 962 S.W.2d 544, 548 (Tex. Crim. App. 1997); *Solis v. State*, 945 S.W.2d 300, 301 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd)).

Because appellant did not object during the trial, preservation could only be effectuated through her new-trial motion. "To preserve an issue by motion for new trial, a defendant must present the motion to the trial court." *Richardson*, 328 S.W.3d at 61 (citing TEX. R. APP. P. 21.6). The mere filing of a motion for new trial is insufficient for presentment; a defendant must ensure that the trial court has actual notice of it. *See*

8

*Carranza v. State*, 960 S.W.2d 76, 79–80 (Tex. Crim. App. 1998) (en banc) (interpreting predecessor rule, which is identical to 21.6); *Richardson*, 328 S.W.3d at 61; *see also Guilbeau v. State*, No. 06-10-00140-CR, 2011 WL 1458701, at *2 (Tex. App.—Texarkana Apr. 18, 2011, pet. ref'd) (mem. op., not designated for publication). Actual notice may be evidenced by the judge's ruling, signature or notation on the proposed order, or by a hearing set on the court's docket. *See Carranza*, 960 S.W.2d at 79; *Richardson*, 328 S.W.3d at 61; *see also Guilbeau*, 2011 WL 1458701, at *2.

Appellant failed to show that the trial court had actual notice of her motion for new trial, and thus failed to preserve this claim for review. *See* TEX. R. APP. P. 26.1, 33.1; *Richardson*, 328 S.W.3d at 61 (holding unpreserved defendant's claim of cruel and unusual punishment where defendant failed to object at trial and filed but did not present motion for new trial). We overrule appellant's second issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
11th day of July, 2013.

9